NEW ENGLAND TRUST COMPANY, trustee, vs. MARY W. PAINE & others.

Middlesex.   October 7, 1946. — December 2, 1946.

Present: FIELD, C.J., DOLAN, RONAN, & WILKINS, JJ.

*Trust,* Investments, Exemption of trustee from liability.

Reaffirmance of the decision reported in 317 Mass. 542 that, if a trustee under a will, by delaying from 1910 to 1939 in selling New England railroad stocks which declined substantially in value, failed to exercise the degree of judgment required of him in the circumstances, nevertheless he was exonerated from liability therefor to the beneficiary of the trust by a clause in the will providing that he should "not be responsible for involuntary losses, or to make good any portion of the estate save what shall be lost by . . . [his] own wilful default."

A clause in a will, providing that a trustee thereunder should "not be responsible for involuntary losses, or to make good any portion of the estate save what shall be lost by . . . [his] own wilful default," exonerated the trustee from liability to the beneficiary for an overinvestment in stock of certain New England railroads in 1904 and 1905 which was found to be "no more than a mistake of judgment," and for his retention of such stocks to 1910.

PETITION in the Probate Court for the county of Middlesex for the allowance of the first thirty-five accounts of the trustee under the will of James A. Woolson, late of Cambridge.

Following the decision of this court reported in 317 Mass. 542, the case was heard by *Poland,* J., and a decree was entered allowing all the accounts. The respondents appealed.

*J. Wiggin,* (*F. W. Campbell* with him,) for the respondents.

*H. D. McLellan,* (*G. B. Rowlings & H. V. Atherton* with him,) for the petitioner.

RONAN, J.   This is an appeal from a decree of the Probate Court allowing the first thirty-five accounts of the trustee under the will of James A. Woolson. The first six accounts covered the period from May 4, 1904, when the administration of the trust began, to May 16, 1910, and the seventh to thirty-fifth accounts extended from the last mentioned date to July 8, 1939.

The case was first heard in the Probate Court upon the report of an auditor and upon oral evidence. The judge ruled that the first six accounts were not open for review. He filed a report of the material facts. He found that on May 16, 1910, when the seventh account begins, about forty-seven per cent of the trust estate, based upon the then market values, consisted of railroad stocks "in the Boston and Maine and New Haven railroads and railroad lines leased to them, with some shares of Boston and Albany stock"; that the original investments, which began in 1904, in these stocks amounted to approximately $200,000, which was about one half of the trust estate; and that on July 8, 1939, at the end of the accounting period, the market value of these stocks had shrunk about ninety per cent. He found that a competent trustee reasonably could have reached the conclusion that the retention of the railroad stocks was proper in all the circumstances; that, taking the evidence most strongly in favor of the respondents, the retention of the railroad stocks was at most a mistake of judgment; and that the officers of the trustee at all times acted in good faith in the sense that their only motive was to act for the best interest of the trust estate. Even if the trustee's retention of the railroad stocks was negligent, the judge found and ruled that the conduct of the trustee did not make out a case of wilful default within the exculpatory clause of the testator's will. A decree allowing the seventh to thirty-fifth accounts, inclusive, was reversed upon appeal to this court. *New England Trust Co.* v. *Paine,* 317 Mass. 542.

The case was again heard in the Probate Court upon the evidence which had been introduced at the first hearing, together with the transcript of the testimony given by one of the trustee's witnesses before the auditor. The judge entered a decree allowing all of the thirty-five accounts of the trustee, and also filed a report of the material facts. From this report it appears that the auditor had considered the first six accounts, although the reference to him was limited to the seventh to thirty-fifth accounts, and that the parties had implicitly accepted his findings relative to these

accounts as evidence at the second hearing. The judge adopted the findings of the auditor which, in so far as now material, were in substance that all the investments in the railroad stocks made prior to July 29, 1904, were reasonable and prudent from the standpoint of diversification, but that investments made in the leased lines of the Boston and Maine Railroad after the last mentioned date, which included two purchases of stock in 1904, four in 1905, and one in 1911, amounting to $22,717.25, were neither reasonable nor prudent. The auditor made a similar finding with reference to an investment during the period from 1925 to 1929 in the prior preference stock of the Boston and Maine Railroad to the extent of $1,224. In other words, he found that the trustee had invested in the Boston and Maine Railroad and its leased lines $23,941.25 in excess of what it in the exercise of sound judgment should have found to have been a fair and proportionate part of the trust estate to invest in this railroad and its leased lines. The judge found that the loss caused by the original investments in the railroad stocks was neither voluntary nor caused by the wilful default of the trustee as those words are used in the exculpatory clause of the will, and that, taking the evidence most strongly against the trustee, "the over-investment was no more than a mistake of judgment, without taint of bad motive." He reported that no facts were found at the second hearing that would change any of his findings contained in his first report of material facts concerning the seventh to thirty-fifth accounts, inclusive, and he made these findings a part of his second report of material facts.

The respondents now contend that the trustee should be held responsible for this overinvestment of $23,941.25, and that the trustee should not have retained all these railroad stocks (with the exception of two small lots which they sold) throughout the entire accounting period and should reimburse the trust estate for the loss which resulted therefrom.

These same contentions with others were urged by the respondents when the case was here before. The testator's

will provided, "I furthermore direct that my said trustee shall not be responsible for involuntary losses, or to make good any portion of the estate save what shall be lost by its own wilful default." This provision was considered in the light of previous decisions of this court and was interpreted to mean "that it was the purpose of the testator to excuse his trustee both with respect to the consequences of any breach of trust that it did not intend to commit, knowing it to be a breach of trust, and from responsibility for any loss that it did not intend to bring about," and that the trustee was not liable for negligence, or for failure to exercise sound judgment amounting to a breach of trust, or for an intentional breach unaccompanied by any intent to cause loss of trust property. 317 Mass. at pages 549–550. It was also assumed that, if the exemption thus intended by the testator to be granted to the trustee should be confined to the limits designated by Am. Law Inst. Restatement: Trusts § 222, even then the retention of the railroad stocks did not amount to bad faith, or constitute an intentional breach of trust, or show reckless indifference to the interests of the beneficiaries. It was held that the judge was right in ruling that the trustee was exonerated by the exculpatory clause from liability on account of the retention of the railroad stocks during the accounting period from May 16, 1910, to July 8, 1939. None of the facts upon which this ruling was based was changed by any evidence introduced at the second hearing in the Probate Court and, the facts being the same as those presented when the case was here before, we know no reason why we should not now adhere to our former opinion exonerating the trustee on account of the retention of these stocks during the period covered by the seventh to thirty-fifth accounts.

We are not sure that the respondents contend that the trustee should be held liable for the retention of these stocks during the accounting period covered by the first six accounts, and so we briefly consider the matter. The auditor set out at great length the physical assets, the natural and industrial advantages and prospects and the financial set up of each of the railroads whose stocks were in-

cluded in the original investments made by the trustee, and the history of regular payments of dividends for many years by each. The auditor also dealt with the subsequent history of these railroads. Without repeating the findings of the auditor or the testimony concerning their history up to May 16, 1910, including the regular payment of dividends and the controversy that arose in 1909 when the New York, New Haven and Hartford Railroad Company had acquired stock control of the Boston and Maine Railroad, it is enough to say that up to May 16, 1910, the end of the sixth accounting period, not a single fact appeared that should have reasonably induced a trustee acting under the usual obligations attaching to the office, much less one administering a trust with the benefit of an exculpatory clause similar to the present one, to dispose of any of these stocks.

The finding of the auditor that there was an overinvestment totaling $23,941.25 in the stock of the Boston and Maine Railroad system must stand, and there was no error in the judge's adopting as he did this finding. It is to be noted that $22,590 of this total resulted from purchases made in 1904 and 1905. The circumstances attending the making of these investments must be considered in determining the liability of the trustee, since this overinvestment alone does not necessarily impose a duty to make good the loss upon a trustee protected by a broad exculpatory clause like the one in the instant case. These railroads in 1904 and 1905 were conservatively capitalized and were subject to reasonable public regulation. They were suitably located both as to connecting lines and as to the districts in which business was available. They had regularly paid dividends for several years and could reasonably be expected to continue to do so. Their stocks at that time enjoyed a favorable tax advantage. These stocks were readily marketable and were in good demand by trustees. Doubtless, these shares were proper investments for trust funds. A purchase somewhat in excess of the amount that should be invested by a trustee carries with it far different implications as to the diligence, judgment and good faith of the trustee from an investment of the same amount in a comparatively unknown

or a speculative stock.  The present rules for diversification of trust investments were not so well established at the turn of the century as they now are.  The amount to be invested in any one venture still remains a matter of judgment and discretion, although the judgment and discretion should now be exercised within the more narrow limits usually employed by trustees.  The finding of the judge that the entire overinvestment, resulting from purchases made before and after May 16, 1910, was no more than an error of judgment "without taint of bad motive" cannot be said to be plainly wrong.  Neither can the further finding that the loss caused by the original investments came within the exculpatory clause.  It follows that, whether the conduct of the trustee with reference to the overinvestment and also the original investments is tested by the exemption that the testator intended the trustee to have as expressed by the exculpatory clause or by the rule formulated by Am. Law Inst. Restatement: Trusts, § 222, the result is the same, as the findings show that the trustee acted within the exculpatory clause and not in violation of the rule.

This is not a proper case for an award of costs and expenses against a trustee who has been exonerated.  Nor should an award be ordered out of the trust funds for the reasons mentioned in the former opinion.

*Decree affirmed.*