DAVID LESLIE WHITCOMB, a Minor, by NORMAN C. WHITCOMB, his father and next friend, *Appellee*, v. IRA HUFFINGTON, *Appellant*.

No. 40,225

DENNIS CHARLES WHITCOMB, a Minor, by NORMAN C. WHITCOMB, his father and next friend, *Appellee*, v. IRA HUFFINGTON, *Appellant*.

(304 P. 2d 465)

Opinion filed December 8, 1956.

*Payne H. Ratner,* of Wichita, argued the cause, and *Louise Mattox, Payne H. Ratner, Jr., Russell Cranmer, Dale B. Stinson, Jr., Cliff W. Ratner, William L. Fry, A. Wayne Murphy, Bernard V. Borst* and *D. Clifford Allison,* all of Wichita, were with him on the briefs for the appellant.

*C. H. Morris,* of Wichita, argued the cause, and *Robert F. Bailey* and *Willard J. Kiser, Jr.,* both of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Price, J.: These consolidated appeals are actions by minor children, acting through their father as next friend, to recover damages from one who allegedly alienated their mother's affections and thus broke up the family home.

The appeals are from orders overruling demurrers to the petitions. The questions are identical and our decision in one applies to the other. Our discussion concerns the facts in case No. 40,224, as disclosed by the allegations of the petition.

David Leslie Whitcomb is nine years of age, and prior to 1955 he and his brother, Dennis, age twelve, plaintiff in case No. 40,225, lived with their natural parents, Norman and Barbara Whitcomb, as a family unit, in Wichita.

In 1955 the defendant Huffington became interested in Barbara and began to bestow his affections upon her, well knowing that she was married and was David's mother. The relationship ripened into an open and notorious "affair," resulting in immoral conduct on their part. The matter came to the attention of David's father, Norman. Notwithstanding, defendant intentionally, maliciously and systematically continued to impose himself upon Barbara, causing her to fall in love with him and to cast her husband aside. As a result of the actions of defendant in alienating the affections of Barbara from her home and family, Barbara brought an action for divorce. The marriage was dissolved, thus bringing about a complete breakup of the family home and circle theretofore enjoyed by David, but we are not advised to whom the decree of divorce was granted.

As a result of all of this, David has suffered mental pain and emotional anguish; has been deprived of the companionship of his father and the benefit and protection of a secure home maintained

by the love and joint efforts of his parents; has suffered the loss of adequate financial support from them, and has become emotionally and mentally disturbed. He seeks actual and punitive damages in the amounts of $25,000 and $10,000, respectively.

As above related, defendant's demurrer, on the ground the petition fails to state facts sufficient to constitute a cause of action in favor of plaintiff, was overruled, and he has appealed.

The precise question, which, incidentally, has never been decided by this court, is whether such an action may be maintained by a minor child who concededly is the innocent victim of the "eternal triangle."

It is conceded by the parties that such an action by a minor child was not maintainable under the common law, and, further, that we have no statute in Kansas authorizing it. From an annotation appearing at 12 A. L. R. 2d 1178, immediately following the report of the case of *Henson v. Thomas*, 231 N. C. 173, 56 S. E. 2d 432, 12 A. L. R. 2d 1171, and note under § 5, found at p. 600 of the 1956 (Blue Book) A. L. R. 2d Supplement Service, it appears the question has been resolved in fifteen jurisdictions—three (Illinois, Michigan, Minnesota) favoring the right to maintain the action, and twelve (Arkansas, California, Colorado, Connecticut, District of Columbia, Massachusetts, New Jersey, New York, North Carolina, Ohio, Texas, Wisconsin) being opposed.

To take up and discuss in detail the facts and reasoning upon which each of the mentioned jurisdictions has decided the question would merely encumber this opinion and result in repetition of that which the interested reader may discover for himself by reference to the authorities cited.

In support of the trial court's ruling that such an action may be maintained, it is argued that the approach to the question must be based on a study of the rights and obligations of those who are parties to a family; that the father, mother, and children ordinarily constitute the family, and that each is entitled to the society and companionship of the others, that, generally speaking, family rights consist of two kinds, that is, those of the members of the family among themselves, and those of the members of the family as against the world; that among the former are such duties of the parent as providing his child with support, education and protection, and of the child to render obedience and services to the parent; that as a practical proposition the family is in large measure a

self-governing unit so far as its internal affairs are concerned; that among the rights of the members of a family as against the world are those of having the family maintained intact without interference by outsiders; that enticement of a mother from her home and family is a grievous and tragic wrong to her child, and is a loss for which the child should have a right to recover; and that merely because right of redress in a minor child in a case such as this did not exist at common law, and has not been authorized by statutory enactment, presents no sound reason why courts in this modern era of the family concept should deny relief in a proper case. See *Daily v. Parker*, 152 F. 2d 174 (7 CCA, Illinois), and which is reported at 162 A. L. R. 819 (followed by an annotation and editorial comment), and *Miller v. Monsen*, 228 Minn. 400, 37 N. W. (2d) 543.

In the absence of any decision of this court, cases pro and con from other jurisdictions are merely persuasive on the question. We have examined the decisions, however, and have concluded that those denying the right to maintain the action represent, particularly from the standpoint of sound public policy, the better-reasoned view, and that they should be followed in this state.

There are a number of reasons which persuade us to this decision. In the first place, plain everyday common sense, and some knowledge of the practical realities and facts of everyday life, lead us to the inescapable conclusion that nine-year-old David did not initiate this lawsuit. If a nine-year-old child may bring it so might a one-year-old baby. It is nothing more nor less than an action for alienation of affections by the husband, with his minor son, David, substituted as plaintiff. Under existing law, a husband is entitled to bring such an action, the right being based on the historical theory and doctrine that it grows out of and is directly connected with the marriage relationship between husband and wife.

We are not specifically concerned with the moral aspects of defendant's conduct, which, to say the least, was reprehensible, but in which the wife and mother apparently joined voluntarily. No one will deny the fact that under such circumstances a child is the innocent victim and, in most instances, suffers damage — emotional, financial, and otherwise. But, that is not the question. The question is whether, under such circumstances, the child is to be permitted to bring the action.

If we were to answer the question in the affirmative the ramifications and far-reaching results of our decision would readily be apparent to anyone giving much thought to the matter. In practical

effect we would be opening up a new field of litigation, heretofore entirely unknown, between minor children and their grandparents, for instance, or between minor children and business or social companions or acquaintances of their parents, when, perchance, some incident or line of conduct on the part of those persons occurs which might be said to have contributed to the eventual breakup of the family home and circle. We recognize fully that merely because the asserted cause of action was unknown to the common law and has no statutory sanction in this state, such fact does not present a conclusive reason for the denial of the existence of such right. Nevertheless, we are of the firm conviction that from the standpoint of sound public policy the creation of new rights of action in the field of alienation of affections is a question for the consideration and determination of the legislature, and is a function which this court should not usurp.

It follows that the order overruling the demurrer in each of the cases before us was erroneous and is therefore reversed.

SMITH, C. J., and ROBB, J., dissent.