GAUMONT, Appellant,

v.

EMERY AIR FREIGHT CORPORATION, d.b.a.
Emery Worldwide, et al., Appellees.

[Cite as *Gaumont v. Emery Air Freight Corp.* (1989), 61 Ohio App.3d 277.]

Court of Appeals of Ohio,
Montgomery County.

No. 11199.

Decided Feb. 16, 1989.

278

*John D. Pearson,* for appellant.

*Gerald L. Turner,* for appellees, Emery Air Freight Corporation and Richard J. Ingraffia.

*Robert J. Surdyk,* for appellees, Security Experts, Inc. and Mark Cox.

BROGAN, Judge.

On March 13, 1986, plaintiff-appellant, Jean Gaumont, was terminated from his position as maintenance manager for Emery Air Freight Corporation ("Emery"). On June 10, 1986, Gaumont brought a lawsuit in the Montgomery County Common Pleas Court contending that Emery and his immediate supervisor, Richard Ingraffia, had wrongfully terminated him from his employment.

In the complaint Gaumont alleged that he had been suspended by Emery while Emery was conducting an investigation into allegations of misuse and theft of Emery property and services. Gaumont alleged that the defendants had represented to him that if the investigation disclosed no misuse or theft by Gaumont he would be reinstated to his position.

He also alleged that the defendants assured him that he and his attorney would be permitted to meet with the defendants at the conclusion of the investigation and before any decision was made about Gaumont's employment status so that Gaumont and his attorney could review the results of the investigation and offer other relevant statements or documentation.

Gaumont alleged that the defendants refused to comply with their promises and terminated him despite the fact the investigation disclosed no criminal conduct on behalf of the plaintiff.

Gaumont alleged that Emery failed to comply with a certain employment manual which he contended created an express or implied contract that his job would not be terminated except for just cause. He also alleged because of the false and fraudulent representations of Emery that he would be accorded a fair hearing prior to his discharge, he did not seek other employment and was damaged thereby.

Finally, Gaumont alleged that Emery wrongfully withheld approximately $600 in back pay and expense funds from him. Gaumont sought compensatory and punitive damages as well as injunctive relief to obtain his former position with Emery.

Both defendants answered the complaint, generally denying the essentials of the complaint. Emery also counterclaimed, alleging that Gaumont had converted to his own use the property and services of Emery Air Freight Corporation.

Gaumont denied the allegations of the counterclaim and moved to amend his complaint to add two additional defendants, namely, Security Experts, Inc. ("Security") and one of Security's employees, a Mark Cox.

On the same date the trial court granted the plaintiff's motion to amend the complaint, the trial court granted the original defendants' motion for summary judgment as it related to the wrongful termination cause of action.

The court found that the employee's manual was not a contract of employment between the parties. The court also found that Emery was not estopped from discharging the plaintiff because of the alleged promises of Emery not to terminate the plaintiff because the plaintiff's affidavit and testimony "showed no act or forbearance on the part of the plaintiff in relation to the representation claimed to have been made by defendants on February, 1986, and no detriment to plaintiff from any such act or forbearance." In the amended complaint, Gaumont alleged that agents of Emery, Ingraffia and the additional defendants had slandered him by releasing statements to members of the public that he stole Emery property. He also contended they had invaded his privacy by conducting a surveillance of his home and by questioning his associates and acquaintances.

Security and Cox answered the amended complaint and raised the affirmative defenses of truth and qualified privilege.

Emery and Ingraffia then moved for summary judgment on their behalf. Attached to their motion was an affidavit of Ingraffia. He stated he was the manager of the Emery operation at Dayton International Airport. He stated that he did not promise the plaintiff or his attorney that they could review Emery's investigation or that he would meet with them prior to any termination of the plaintiff.

He also stated that Security and Cox were independent contractors and were not employees of Emery and that he did not direct or control the investigation of the plaintiff. He also stated he did not communicate with anyone about Gaumont's activities except his immediate supervisor and Cox.

In their motion, Emery and Ingraffia argued that Gaumont was not wrongfully discharged because he was an at-will employee, that the slander claim was without merit because the defendants' communications about the plaintiff were "qualifiedly privileged," and that the plaintiff could not establish that he had suffered severe emotional stress.

Gaumont countered in an affidavit in which he denied stealing any of Emery's property or services. Gaumont stated he spoke with David Strueberg, an employee with Mac Tool Company, a vendor or supplier for Emery. He said Strueberg informed him that he was contacted by two Emery employees who told him that plaintiff had obtained tools from Mac Tool and had billed Emery for these purchases, and that these charges were not authorized by Emery and were a fraudulent and dishonest act by the plaintiff.

Gaumont attached a copy of a letter Strueberg received from Joseph Mattioli, an internal auditor with Emery. In the letter, Mattioli writes:

"[P]lease provide us with photocopies of your documents relating to the exchange of a Snap–On tool box for a Mac Tool box by Mr. J. Gaumont as offered by you during our telephone conversation."

Gaumont also filed the affidavit of Deputy Sheriff James Griffieth of the Miami County Sheriff's Office. In the affidavit, Griffieth stated he investigated a burglary complaint made by Gaumont. He stated that in July or August 1986, an employee of Security met with him and told him he was conducting an internal investigation for Emery of Gaumont.

Griffieth stated the investigator asked for a copy of the burglary complaint and whether Griffieth had seen any articles in the Gaumont property with Emery's name on it. He stated the investigator informed him that Gaumont had been involved in various acts of internal theft from Emery. He said he was not requested by the Security employee to conduct an investigation of Gaumont nor was one pending prior to meeting the Security employee.

The trial court proceeded to grant summary judgment on the wrongful termination cause of action for the same reasons the court gave in granting summary judgment on the original complaint.

The court also granted Emery and Ingraffia's motion for summary judgment on the slander cause of action as it related to statements made to fellow Emery employees and its vendors. The court denied summary judgment as to the invasion of privacy cause of action and as to any statements made by Mark Cox to Deputy Griffieth.

Again Emery and Ingraffia moved for summary judgment on the remaining causes of action. They pointed out to the court that Cox was not an employee of Emery, but of Security. In the affidavit, Ingraffia stated he did not control the investigation conducted by Security of Gaumont. He also stated he did not direct any surveillance of Gaumont's home by employees of Security.

The defendants also attached the deposition of William E. Brown, Ph.D., Gaumont's psychologist, to demonstrate that Gaumont had not suffered any extreme emotional stress as a result of his termination from Emery.

Gaumont countered with an affidavit that Security maintains an office within Emery's facilities and their mailing address was the same as Emery's.

The trial court then granted summary judgment to the defendants on the slander cause of action, leaving only the plaintiff's cause of action for back pay and expense reimbursement. Emery later confessed judgment on this cause of action.

Cox then moved for summary judgment on the plaintiff's slander cause of action. He attached the affidavit and deposition of Frank Smith, a Security employee, who acknowledged that it was he who had spoken with Deputy Griffieth about Gaumont's activities at Emery. Cox also included Gaumont's deposition, wherein Gaumont admitted that the only slanderous remark he knew Cox had made was during his testimony before the Bureau of Unemployment Compensation. Cox argued that such a remark made in a judicial proceeding is accorded absolute immunity.

The trial court then proceeded, after considering Gaumont's memoranda in opposition to the motion, to grant summary judgment for Cox.

Security then moved for a judgment upon the pleadings on the basis that the complaint alleged that Security was liable because of the slander committed by Cox. If Cox was not liable, Security argued, then it could not be liable vicariously as Cox's employer or master.

Plaintiff responded that since the complaint alleged that Emery's agents defamed him, and a jury could conclude that Security was in fact the agent of Emery, the motion of Security should be denied. Plaintiff then moved to file a second amended complaint to allege "that agents of Security, in addition to Cox, committed actionable conduct against the plaintiff."

The trial court then sustained Security's motion to dismiss and overruled the plaintiff's motion to file a second amended complaint. The court then dismissed Emery's counterclaim without prejudice in the event this court reversed the judgment of the trial court.

Gaumont then appealed the judgment of the trial court.

In his first assignment of error, plaintiff contends the trial court erred in granting summary judgment in favor of Emery and Ingraffia as to plaintiff's alleged wrongful discharge claims.

In *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, the Ohio Supreme Court held that, unless otherwise agreed, either party to an oral at-will employment agreement may terminate the employment relationship for any reason which is not contrary to law. The court further held that the facts and circumstances surrounding an oral employment at-will agreement, including the character of the employment,

custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge.

In *Mers*, the appellant worked as a traveling representative of the Dispatch for four years when he was arrested for serious crimes. He was suspended from his job without pay because of the accusations, until such time as the criminal charges were favorably resolved. The trial resulted in a mistrial and the charges were ultimately dropped.

The Dispatch notified Mers he would not be reinstated and terminated Mers's employment. Mers filed suit against the Dispatch and two of his supervisors, alleging that under the terms of his oral employment agreement, oral promises made to him by the Dispatch at the time of his hearing and suspension, provisions in the company handbook, and the Dispatch's failure to follow its own internal grievance procedures, all provide grounds for his wrongful discharge action. Mers argued he was entitled to relief either on a breach of contract or promissory estoppel basis.

The Dispatch argued that Mers was an employee at will and subject to discharge for any reason. The trial court granted summary judgment for the Dispatch. On appeal, Mers argued he was entitled to relief under a theory of promissory estoppel and implied-in-fact contract not to discharge him except for just cause. The court of appeals affirmed the trial court's grant of summary judgment.

The Supreme Court refused to add a just cause requirement to the employment-at-will doctrine long established in Ohio. However, Chief Justice Celebrezze noted, at 103–105, 19 OBR at 264–65, 483 N.E.2d at 154–155:

"In *Henkel [v. Educ. Research Council], supra* [ (1976) 45 Ohio St.2d 249, 74 O.O.2d 415, 344 N.E.2d 118], this court stated that the 'facts and circumstances' surrounding an at-will agreement should be considered to ascertain if they indicate what took place, the parties' intent, and the existence of implied or express contractual provisions which may alter the terms for discharge. Appellant alleges, *inter alia*, that oral representations were made which limited the Dispatch's right to discharge him. '[T]he character of the employment, custom, the course of dealing between the parties, or other fact which may throw light upon the question' can be considered by the jury in order to determine the parties' intent. *Bascom v. Shillito* (1882), 37 Ohio St. 431, 434. Employee handbooks, company policy, and oral representations have been recognized in some situations as comprising components or evidence of the employment contract. *E.g., Hedrick v. Center for Comprehensive Alcoholism Treatment* (1982), 7 Ohio App.3d 211 [7 OBR 272, 454 N.E.2d 1343];

*Helle v. Landmark, Inc.* (1984), 15 Ohio App.3d 1 [15 OBR 22, 472 N.E.2d 765].

"*A priori*, the facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge. In this regard, we believe there was a genuine issue concerning the components of the facts and circumstances surrounding this employment agreement.

"An additional limit on an employer's right to discharge occurs where representations or promises have been made to the employee which fall within the doctrine of promissory estoppel. The Restatement of the Law 2d, Contracts, as quoted by this court in *Talley v. Teamsters Local No. 377* (1976), 48 Ohio St.2d 142 [2 O.O.3d 297, 357 N.E.2d 44], provides the rule of law that: ' "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. * * * " ' '

"In this vein, appellant contends that he relied to his detriment on the Dispatch's promise that he would be reinstated with back pay if the criminal charges were 'favorably resolved.' Appellant argues that there existed a factual issue as to whether the state's dismissal of the charges constituted a favorable resolution. If so, appellant asserts that he should be able to enforce the Dispatch's promise. ·

"The trial court herein incorrectly concluded that promissory estoppel cannot be used to limit a contract which is otherwise terminable at will. (See *Hedrick* and *Helle, supra*, which correctly recognize promissory estoppel as a viable exception to rebut a presumption that the employment was at-will.) Although the appellate court herein retreats from the trial court's holding by recognizing promissory estoppel as a possible exception, it concludes the appropriate test involves the promisor's subjective interpretation of the promise. In other words, the promisor's construction of what it meant by making the promise was found to be controlling. The court of appeals erroneously concluded it was not unreasonable for the Dispatch to interpret its 'favorable resolution' promise to mean a jury acquittal. In our view, the employer's representation is to be determined by what the 'promisor should reasonably expect' the *employee* to believe the promise means if expected action or forbearance results. Consequently, we find that the meaning of the Dispatch's promise, and whether the acts flowing from it were reasonable, are questions of fact for jury determination.

"We therefore hold that where appropriate, the doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise.

"The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee."

Plaintiff contends that he was terminated in violation of the provisions of Emery's handbook. Specifically, he contends the handbook permitted the company to terminate him only upon proof that he committed a major infraction of company policy, and that he committed no such violation of the company's policy. The defendants countered in their motion with a copy of Emery's handbook. The handbook included a specific disclaimer signed by the plaintiff, wherein he acknowledged that the employee handbook was not a contract for personal services and that he recognized that his employment could be terminated at the option of either the company or himself. The disclaimer was dated March 1985.

Plaintiff acknowledged that he signed the disclaimer, but contended he did so under threat of termination. We have previously held that these "disclaimers" negate any inference that the employee handbooks create any contractual obligations upon employers. See *Procuniar v. General Motors* (Apr. 9, 1984), Montgomery App. No. 8427, unreported, 1984 WL 4833. If the disclaimer was signed by the plaintiff at the time the handbook was promulgated under threat of termination, it was clear that Emery intended the handbook not to have any contractual implications. There could hardly be any clearer evidence that Emery intended the plaintiff's status with Emery to be that of an employee at will.

Plaintiff contends because of the defendants' promises that he would not be terminated until he was given an opportunity to refute Emery's accusations against him, "he did not seek other employment and was damaged thereby."

The defendants refuted plaintiff's "promissory estoppel" claim by presenting evidence that plaintiff did not seek other employment after he was suspended because he had been injured on the job prior to his suspension and thus was unavailable for other employment.

In a memorandum filed with the court, the defendants refer to a *copy* of a July 17, 1986 deposition of the plaintiff. The docket and journal entries fail to indicate that the deposition was filed with the court as evidentiary material in

support of the defendants' motion for summary judgment. Conversely, there is no evidence that plaintiff objected to the court's considering the purported copy of plaintiff's deposition.

In the deposition, plaintiff acknowledged that he suffered an injury to his knee (crushed cartilage) in early February 1986. Plaintiff acknowledged that he didn't look for a job while he was off work due to his injury:

"Q. Okay, And he says you can't look for a job during this period of time.

"A. Why would I look for a job when I can't perform a job."

Gaumont further acknowledged in the deposition that he remained off the job past the date of his termination because of his work-related injury. This testimony established that Gaumont did not seek other employment not because of representations made by the defendants that he would not be terminated, but because he "couldn't perform a job" if he sought other employment. The deposition established that Gaumont underwent surgery for his knee injury in late March 1986 and was to remain off work until August 10, 1986 because of his physician's orders.

■ In *Brown v. Ohio Cas. Ins. Co.* (1978), 63 Ohio App.2d 87, 17 O.O.3d 267, 409 N.E.2d 253, the Cuyahoga County Court of Appeals held that a trial court, when ruling on a motion for summary judgment, may consider documents other than those specified in Civ.R. 56(C) in support of the motion where no objection has been raised. In the matter *sub judice*, appellant did not object to the trial court considering portions of Gaumont's unfiled deposition, and has not raised as error in this court the trial court's consideration of such material. In *Northern Assurance Co. of America v. Archer Plumbing Co.* (Mar. 10, 1975), Hamilton App. No. C–741140, unreported, the court held it was reversible error to grant summary judgment on improperly authenticated evidence even though no objection was interposed at the trial or in the appellate court.

We believe the view espoused by the Cuyahoga County Court of Appeals to be the more enlightened view. This is especially true where appellant has not raised an assignment specifically objecting to the technical violation.

■ Plaintiff failed to rebut the evidence offered by the defendants that plaintiff had not relied on the defendants' representation to his detriment, *i.e.,* that he did not seek other employment because of the representations of Ingraffia. Accordingly, we find the trial court properly rejected plaintiff's claim that he was damaged because of promises made by the defendants.

Plaintiff contends that the defendants' promises to plaintiff that he would not be terminated from his employment with Emery until he had been given an opportunity to refute the theft charges altered the at-will employment

status of plaintiff. He contends that these representations created an implied or express contract that limited Emery's right to discharge him until it honored its representation to him.

In *Day v. Good Samaritan Hosp. & Health Ctr.* (Aug. 17, 1983), Montgomery App. No. 8062, unreported, 1983 WL 4934, this court held that a hospital manual created a contract to terminate for "just cause" only. We held that Donna Day's continued faithful performance of her duties formed the consideration or benefit which flowed to the hospital in exchange for its unilateral promises to comply with its hospital manual. In the matter *sub judice,* plaintiff provided no consideration for Emery's alleged promise not to terminate plaintiff until he was given an opportunity to refute the charges which formed the basis of his suspension. Indeed, at the time of the alleged representations, plaintiff was suspended and provided no services in exchange for Emery's promises. Plaintiff was even paid during the suspension period prior to his ultimate termination. Accordingly, we find the trial court properly found no express or implied contract not to terminate plaintiff except for just cause flowed from the alleged representations of Emery. The first assignment of error is overruled.

In his second assignment of error, plaintiff contends the trial court erred in granting summary judgment to Emery and Ingraffia with respect to the fifth and sixth causes of action in plaintiff's complaint, to wit, the slander claim and the invasion of privacy claim.

In the amended complaint, Gaumont alleged that during the period of his suspension and after he was terminated Emery employees and Ingraffia made numerous statements to individuals in the area of Miami County and Montgomery County which accused Gaumont of crimes or acts of theft of Emery property. Gaumont asserted these statements were false and damaged his reputation. He contended the statements were made by the defendant maliciously or with reckless disregard for the truth of the statements.

In the sixth cause of action, Gaumont contended that Emery employees had invaded his privacy by questioning his associates and acquaintances and by conducting a surveillance of his home. He contended he suffered mental anguish and he sought general and punitive damages from the defendants.

In support of Emery and Ingraffia's motion for summary judgment, Ingraffia stated in an affidavit that the only communication he had regarding the theft investigation was with his direct Emery supervisors and with Mark Cox of Security, who were conducting the investigation for Emery.

Gaumont countered Ingraffia's affidavit with evidence that Emery employees had communicated about the investigation to one of Emery's vendors and

that Mark Cox had communicated defamatory remarks about him to Deputy Griffieth.

In *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 72 O.O.2d 134, 331 N.E.2d 713, the Ohio Supreme Court defined "qualified privilege" as one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right, or interest. The court noted the privilege is based on public policy and does not change the actionable quality of the words published, but merely rebuts the inference of malice that is imputed in the absence of privilege, and makes a showing of falsity and malice essential to the right of recovery.

The communication by the defendant being presumptively privileged, when challenged by the defendant's motion for summary judgment, plaintiff was required to come forward with evidentiary material facts from which it might be found that the publication was not only false but actuated by express malice or actual ill will. *Trim-a-Way Figure Contouring Ltd. v. Natl. Better Business Bureau, Inc.* (1971), 37 App.Div.2d 43, 322 N.Y.S.2d 154.

It is well established in Ohio that communications between an employer and an employee or between two employees concerning the conduct of a third or former employee made in good faith concerning a matter of common interest are within the doctrine of qualified privilege. *McKenna v. Mansfield Leland Hotel Co.* (1936), 55 Ohio App. 163, 8 O.O. 463, 9 N.E.2d 166; *Gray v. General Motors Corp.* (1977), 52 Ohio App.2d 348, 6 O.O.3d 396, 370 N.E.2d 747; *Holloman v. Rutman Wine Co.* (1983), 11 Ohio App.3d 257, 11 OBR 383, 464 N.E.2d 180.

We agree with the trial court that Ingraffia's communications to his supervisors and other employees who were involved in the theft investigation were qualifiedly privileged.

Plaintiff contends that the communications made by Emery employees to employees of Emery's supplier, Mac Tool Company, were not covered by the qualified privilege. We disagree. The evidentiary material offered by the plaintiff clearly demonstrates that these communications concerned the circumstances of how certain Mac Tools may have come in possession of plaintiff and may have been billed directly or indirectly to Emery. These communications fall comfortably within the privilege.

In the amended complaint, Gaumont alleged that Cox, pursuant to his employment and duties with Security, made defamatory statements to individ-

uals in Miami and Montgomery Counties. Nowhere in the complaint does Gaumont contend that Security or Cox was an agent of Emery.

Nonetheless plaintiff contends that since Emery's internal audit department assisted Security in the investigation of thefts from Emery's maintenance department, reasonable minds could conclude that Security was an agent of Emery.

Ingraffia countered with an affidavit that neither he nor any members of Emery's staff directed or controlled the investigation of Gaumont by Security. Attached to his affidavit was a copy of the agreement between Emery and Security whereby Security contracted to provide security services for Emery.

The agreement specifies that Security is providing security services for Emery as an independent contractor. The agreement specifies that "neither Emery nor Security will be responsible for or control, or direct in any manner the employees of the other."

The evidence is uncontradicted that Ingraffia requested Security to conduct an investigation of Emery's maintenance department operation. It is also uncontradicted that Ingraffia made available Emery's records, its internal audit department employees, and its employees to assist in Security's investigation. We see nothing unusual in these activities by Emery as a thorough investigation could hardly be conducted without Emery's cooperation. Plaintiff's evidentiary material presented no material fact in dispute upon which reasonable minds could conclude that Security was an agent as opposed to independent contractor in its relationship with Emery.

■ Having concluded that Emery and Ingraffia presented evidence that they enjoyed a qualified privilege to make statements about plaintiff to its employees and suppliers, it was incumbent upon plaintiff to present the trial court with evidence that the defendants made false defamatory statements about plaintiff with actual malice or with reckless disregard for the truth of these statements.

In Gaumont's affidavit, he asserts that certain Emery employees made defamatory remarks to David Strueberg, a Mac Tool employee. These remarks allegedly were made in September 1986. Cox asserted in his deposition that he issued a report of his investigation to Ingraffia on March 4, 1986. A copy of the report is attached to his deposition.

In the report, Cox stated the investigation consisted of interviews with current and former Emery maintenance employees and vendors. Cox reported to Ingraffia several serious allegations concerning Gaumont which were made by other Emery employees. Cox reported to Ingraffia that many of

these allegations of improper conduct were verified by the administration of polygraphs to the accusers.

It may be that the information supplied by the various employees was indeed false. Falsity alone does not remove the qualified privilege available to Emery and Ingraffia. They lose the privilege only if the plaintiff could demonstrate the statements attributed to them were uttered with malice or a reckless disregard for the truth of these statements. In other words, plaintiff was required to prove that Emery and Ingraffia entertained a serious doubt as to the truth of their publication "in order for recklessness to be found." *St. Amant v. Thompson* (1968), 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262.

Viewing the evidence before the court most favorably to the plaintiff, we believe the trial court properly determined that Emery and Ingraffia were entitled to judgment in their favor in the defamation cause of action as a matter of law.

 Plaintiff contends the trial court erred in granting summary judgment to Emery and Ingraffia on his invasion of privacy cause of action. An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering or humiliation to a person of ordinary sensibilities. *Housh v. Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E.2d 340; *Kane v. Quigley* (1964), 1 Ohio St.2d 1, 30 O.O.2d 1, 203 N.E.2d 338. The right to privacy does not prohibit publication of matters under circumstances which would render it a privileged communication. *Knecht v. Vandalia Medical Ctr., Inc.* (1984), 14 Ohio App.3d 129, 14 OBR 145, 470 N.E.2d 230.

 Ingraffia denied in an affidavit that he had spoken to anyone regarding the investigation of Gaumont except his direct supervisors and Cox of Security. He also denied directing the surveillance of Gaumont's home by Cox or any Security employee.

In his deposition, Gaumont made numerous references to Security personnel informing representatives of vendors of the allegations against him. Gaumont never presented evidentiary material which indicated that Emery or Ingraffia ever communicated these allegations to persons outside of Emery employees or their vendors. He indicated he didn't know who was conducting a surveillance of him. He did present the affidavit of Deputy Griffieth who indicated he had seen a car parked in front of Gaumont's home, and the driver drove away upon observing Griffieth.

We find that the trial court properly determined that Emery and Griffieth were entitled to judgment as a matter of law on the invasion of privacy cause of action.

In his third assignment, plaintiff contends the trial court erred in granting summary judgment to the defendant Mark Cox. After the appellant appealed in this case, Cox and Security moved to dismiss the appeal as to them because the appeal was untimely. They argue that since the plaintiff did not file an appeal within thirty days of the July 25, 1988 judgment entry granting summary judgment to Cox, the appeal as to them must be dismissed because this court lacks jurisdiction to consider the appeal.

In entering judgment for Cox, the court stated that it "expressly finds there is no just reason for delay in the entry of this judgment." Counsel certified that a copy of the judgment of July 25 was mailed to counsel for the appellant.

Civ.R. 54(B) provides in pertinent part:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an *express determination* that there is no just reason for delay." (Emphasis added.)

It is evident that the trial court intended and did enter a final appealable judgment in favor of Mark Cox on July 25, 1988. See *Whitaker–Merrell v. Geupel Co.* (1972), 29 Ohio St.2d 184, 58 O.O.2d 399, 280 N.E.2d 922. Since Gaumont did not file his notice of appeal until September 16, 1988, this court has no jurisdiction to review the merits of the third assignment of error. It is accordingly overruled.

In the fourth assignment, plaintiff contends the trial court erred in sustaining Security's motion to dismiss the plaintiff's amended complaint for the reason that the amended complaint did not state a claim against Security.

On August 16, 1988, Security filed a motion to dismiss plaintiff's amended complaint for the reason that the complaint against Security for defamation and invasion of privacy was based on the allegation that Mark Cox, pursuant to his duties as an employee of Security, had defamed plaintiff. Security argued that if the employee or servant is not legally responsible for the alleged injuries of the complaining parties, the employer or master is exonerated from potential vicarious liability, citing *State, ex rel. Flagg, v. Bedford* (1966), 7 Ohio St.2d 45, 36 O.O.2d 41, 218 N.E.2d 601.

On August 17, 1988, plaintiff moved the court for permission to file a second amended complaint which would allege that defamatory remarks were

made by other agents of Security. This request appeared to be the result of learning in the deposition of Frank Smith on October 27, 1987 that it was Smith who had made certain derogatory remarks about plaintiff to Deputy Griffieth. Smith was an investigator for Security at the time he spoke to Griffieth.

The trial court denied the plaintiff's motion to amend the complaint and granted Security's motion to dismiss.

In plaintiff's fifth assignment of error, plaintiff contends the trial court abused its discretion in not permitting him to amend his complaint because Security could not have been prejudiced by the amendment. We agree.

It was clear from the original complaint that Security was a named defendant because plaintiff contended that one of its employees, namely Cox, had defamed him in the course of his conducting an investigation on behalf of Security. During the discovery process, it was learned that it was Smith acting under the supervision of Cox who spoke with Deputy Griffieth about the plaintiff.

Plaintiff did not attempt to add an additional defendant after the statute of limitations had expired, but instead amended his complaint in a factual context to attach vicarious liability to the original defendant, Security. We can discern no prejudice in allowing the plaintiff to amend his complaint to conform to the evidence he discovered upon his completion of discovery.

It is an abuse of discretion for a court to deny a motion timely filed, seeking leave to file an amended complaint, where it is possible that plaintiff may state a claim upon which relief may be granted and no reason otherwise justifying denial of the motion is disclosed. *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 63 O.O.2d 262, 297 N.E.2d 113. A motion for leave to amend a pleading made pursuant to Civ.R. 15(A) should be granted "freely" when justice so requires. *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 12 OBR 1, 465 N.E.2d 377. Plaintiff's fifth assignment of error is well-taken, but the fourth assignment is overruled.

In his sixth assignment, plaintiff contends that the trial court erred in dismissing the counterclaim of Emery upon its application without prejudice to a refiling in the event a higher court remands the case to the common pleas court for trial.

Civ.R. 41(A)(2) provides in part:

"An action shall not be dismissed at the plaintiff's instance except upon order of the court *and upon such terms and conditions as the court deems*

*proper.* \* \* \* Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice."

Once all of plaintiff's claims were resolved by the trial court, Emery as a counterclaimant became the fundamental equivalent of a plaintiff. The court was permitted to set such terms as it saw fit to the dismissal pursuant to Civ.R. 41(A)(2).

We see no injustice in the court's conditioning the dismissal upon success in the appellate courts. The trial court could have accomplished the same result by a certification pursuant to Civ.R. 54(B). As of *this* court's decision the provisions of the judgment of dismissal are moot, as Emery has prevailed in this court, and the judgment of the trial court stands until reversed by the Ohio Supreme Court. The assignment of error is overruled.

Pursuant to our resolution of the plaintiff's fifth assignment the judgment of the trial court is reversed in part and this matter is hereby remanded to the trial court for resolution of plaintiff's second amended complaint as it pertains to his defamation claim against Security. In all other respects, the judgment of the trial court is affirmed.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

WILSON and FAIN, JJ., concur.