Marian NASH, as natural guardian and next friend of Frances Carlen Nash, a minor, et al., Appellants,

v.

Jane BAKER, Appellee.

No. 46378.

Court of Appeals of Oklahoma, Division No. 1.

April 16, 1974.

Released for Publication by the Court of Appeals May 9, 1974.

**1336**

Sanders, McElroy & Carpenter, by David H. Sanders, Jerry H. Holland, Tulsa, for appellants.

Jackman, McQueen, Tanner & Leake, by J. Warren Jackman, Tulsa, for appellee.

ROMANG, Judge:

The appellants, hereinafter referred to as plaintiffs, are five minor children whose mother, Marian Nash, brings this appeal as their natural guardian and next friend. The appellee is hereinafter referred to as the defendant.

Marian Nash filed the petition in her own right and as next friend of the infant plaintiffs, alleging that after Marian Nash and James Nash had been husband and wife for about 18 years and had five children (the minor plaintiffs) of that union, the defendant, a wealthy widow, who knew or should have known of the marriage and children, lured James Nash, the husband and father, away from the plaintiffs by providing said James Nash with a finer home, sexual charms, and other induce-

ments. The plaintiff Marian Nash sought to recover actual and punitive damages in her own right for the alienation of her husband's affections, loss of consortium, and loss of a prospective increased standard of living. In addition, as next friend of her children, she sought recovery of actual and punitive damages under the common law for alienation of their father's affections, interference with their family relationships, and "loss of the society, affection, assistance, moral support and guidance" of their father. The *petition* also alleged adultery by the defendant with said James Nash.

The trial court sustained the defendant's demurrer as to each of the minor plaintiffs' asserted causes of action and overruled it as to Marian Nash's suit in her own right. The latter suit was tried to a jury, resulting in a verdict for the defendant. The only questions before this court deal with whether any cause of action may be maintained on behalf of the minor children of a marriage, against a woman who entices away their father from the marital home.

To focus more clearly on the major problem, some less important assertions in the plaintiffs' brief should be disposed of first. Plaintiffs' petition below did not allege that the defendant had caused plaintiffs to be deprived of *financial* support and maintenance; the nearest the petition came was "assistance, moral support", but their petition on appeal alleges that the defendant had taken from each child "the support and maintenance of [that child's] father." As the father would himself be liable for the support of his children, even after he left the family home, and the petition had alleged that when he left the father was on the brink of increased prosperity, the allegations on appeal regarding "support and maintenance" will be held to mean no more than "loss of society, affection, assistance, moral support and [paternal] guidance". Thus, the present action does not come within the doctrine or holding of Sharum v. Sharum, 101 Okl. 273, 225 P. 682 (1924).

Also, each child seeks punitive damages. The basic question is whether the minor plaintiffs have any causes of action against the defendant at all. If they have not, that disposes of punitive damages. If they have, the question of the measure of damages, and whether it should include punitive damages, would arise. It is unnecessary, and therefore inappropriate, to express any opinion here concerning punitive damages.

Each infant plaintiff alleged as an injury that the defendant had caused the father to commit adultery and that the father was therefore barred from obtaining custody of that infant plaintiff in the event of a divorce. As there is no allegation that defendant was designedly trying to prevent the father from obtaining custody, and as the court in awarding or denying custody to a parent is thinking only of the welfare of the child, 12 O.S.1971, §§ 1275, 1277; 10 O.S.1971, § 21; 30 O.S.1971, § 11; Holdeman v. Holdeman, 191 Okl. 309, 129 P.2d 585 (1942); French v. French, 198 Okl. 135, 176 P.2d 807 (1947) (he obtained divorce for her fault, but court awarded her custody of their infant daughter; affirmed, despite his objection); Childers v. Childers, 202 Okl. 409, 214 P.2d 722 (1950) (wife obtained divorce from husband and was awarded sole custody; each later remarried; modified order to allow him custody part of the time was affirmed), this particular averment may be passed over.

The plaintiffs' brief argues that the Fifth and Fourteenth Amendments to the United States Constitution compel the recognition of their right of action against the defendant. To establish this, the brief cites cases in which those Amendments have been relied on to invalidate invidious discrimination against persons by reason of sex, race, religion, alienage, or national origin. From this the brief concludes that the Constitution similarly prohibits discrimination on the basis of age [specifically, nonage]:

"Clearly, to allow an adult a cause of action against a third person for loss of consortium of a spouse and not allow another citizen, in this instance a minor, a cause of action against a third person for . . . enticing the father away . . . is to deprive these minor citizens of their . . . rights guaranteed by . . . the fifth and fourteenth amendments."

Among the difficulties with that argument are (1) the cases cited regarding children are deciding whether children should have such a right of action, not whether the United States Constitution requires it; (2) those cases are matched by a large number of cases denying children the right to recover; (3) even the California decisions on which the plaintiffs strongly rely, ended up by deciding that although minor children once had a statutory right to recover from a third person who broke up the parents' marriage, a statutory amendment had abolished such right in children, although retaining it in the injured spouse [which could not have been done had the children's rights been constitutionally required]. Rudley v. Tobias, 84 Cal.App.2d 454, 190 P.2d 984 (1948); and (4) the unconstitutionality of various discriminations on the basis of race, sex, creed, alienage, national origin, or *age,* simply do not apply to many distinctions between "wife" and "child". Of jurisdictions still allowing dower to the wife, has even one held that it was *required* to allow dower to children of the marriage? In the eight community property states, has even one held that the Constitution requires that the child have an equal interest in the marital property with the mother? The overwhelming rule, where tenancies by the entireties still exist, is that they can exist only between husband and wife, not between father and daughter or brother and sister.

Plaintiffs' brief relies on Okla. Const. Art. II, § 6 that " . . . speedy and certain remedy [shall be] afforded for every wrong and for every injury to person, property, or reputation; . . ." but the difficulty is that this general pronouncement relates to *legal* wrongs and *le-*

*gal* injuries. Indeed, in the legal sense, "injury" denotes a "legal wrong"—i. e., a wrong for which the law provides a remedy. This section does not promise a remedy to every complainant, not even to every complainant who suffers financial loss or disadvantage or disappointment, but only to such as have suffered a "legal wrong". It does not prevent the Legislature from creating new legal rights [hence, new legal wrongs] or from increasing or reducing or changing the scope of such a right or the remedy for its violation. For decisions similarly construing identical provisions in other constitutions, consult Jackman v. Rosenbaum Co., 263 Pa. 158, 168, 106 A. 238, 241 (1919); Shea v. North-Butte Mining Co., 55 Mont. 522, 179 P. 499, 502 (1919), followed in Stewart v. Standard Publ. Co., 102 Mont. 43, 49, 55 P.2d 694, 695–696 (1936).

This brings us to the plaintiffs' reliance on 76 O.S.1971, § 6:

" . . . every person has, subject to the qualifications and restrictions provided by law, the right to protection . . . from injury to his personal relations."

This must be construed together with the specific section on "Wrongs Against Personal Relations", 76 O.S.1971, § 8:

"The rights of personal relations forbid: (1) The abduction of a husband from his wife or of a parent from his child. (2) The abduction or enticement of a wife from her husband, of a child from a parent, or from a guardian entitled to its custody, or of a servant from his master."

One looks at the section last above quoted to see what "qualifications and restrictions" (to use 76 O.S.1971, § 6's own words) the law has provided, regarding protection of a person's personal relations. This means that the essential question is whether 76 O.S.1971, § 8 gives the infant child a remedy for the "abduction" of his parent.

Plaintiffs rely heavily on Humphrey v. Pope, 122 Cal. 253, 54 P. 847 (1898), which allowed a wife to recover against a woman who enticed away the husband. The California statute (Civil Code § 49) then read the same as 76 O.S.1971, § 8 (quoted above). The California Supreme Court, faced with the argument that mere "enticement" of the husband would not give his wife a cause of action, because the section mentioned "abduction of husband" [or parent] and separately mentioned "abduction or enticement of a wife . . . a child . . . or of a servant . . .", simply held that the legislature must have meant the two subdivisions of the section to afford equal remedies. In other words, the court gave "abduction of a husband" the same breadth as "the abduction or enticement of a wife". The plaintiffs rely heavily on this case, and on Black's Law Dictionary, but it is to be observed that the dictionary says "By statute in some states, abduction includes . . . [enticement away] of a husband . . .", and that Humphrey, supra, is the only decision it cites. Humphrey is not a very strong authority, because (1) the above California statute was subsequently amended by deleting the words "or a parent from his child", which caused Rudley v. Tobias, supra, to deny that a child had a right of action for the enticement away of a parent and the resulting break-up of the parents' marriage; (2) Humphrey was wrongly decided, in that (a) it flatly ignored the legislature's deliberate choice of the additional words "or enticement" in the second subdivision (abduction of wife, child or servant) and the absence of those words in the first subdivision (abduction of husband, or of parent); (b) reflection reveals that the second subdivision related to what at common law would have been considered the weaker or more dependent groups, while the first subdivision dealt with the relatively stronger parties (husbands, parents); (c) examination of 1 Words & Phrases, 172–174 (1964) shows three columns of digested case definitions of "Abduction", and with the exception of Humphrey, and King v. Hanson, 13 N.D. 85, 99 N.W. 1085 (1904), all of the cases cited either used

"abduction" as meaning a forcible taking *or* used it with reference to the "abduction" of a wife, woman, child, or servant; (3) The construction of the California statute, although it then read exactly like the Oklahoma statute, has no special significance in Oklahoma, because Oklahoma did not adopt the statute from California, but from Dakota Territory, which had adopted it from the Field Code some seven years before California drew from the same source. Consult the first page of Bunn's Foreword in 1 R.L.Okl.1910 (publ. 1912). In "The Civil Code of the State of New York", by David Dudley Field and Alex. W. Bradford (Albany, N.Y.1865) §§ 27, 32 of "Part II. Personal Rights" are identical with §§ 27, 32 of the same topic in Dakota (Terr.) Rev.Codes 1877 (1877 edition) and are identical in every material respect with 76 O.S.1971, §§ 6, 8. Although Dakota, in revising its statutes in 1877, adopted some of the amendments California made in 1874, the form of the above two sections was in no way affected by what California did in 1872 or 1874 or what Dakota did in 1877. Nor did the action of the North Dakota court, in King v. Hanson, supra, in adopting the California construction of the statutory clause regarding "abduction of a husband from his wife" have any precedent value in Oklahoma. In adopting Dakota territorial statutes, Oklahoma presumptively adopted the authoritative constructions placed thereon by Dakota courts *prior* to 1890. Dakota decisions subsequent to 1890 are not authoritative in Oklahoma and have no special persuasiveness.

In addition to their misplaced reliance on Humphrey, the plaintiffs cite 5 Oklahoma Law Review 246 (May, 1952). After devoting its two pages to indicating a preference for that group of diametrically opposed decisions which have allowed a child to recover from a third party who entices away one of the child's parents and thus deprives the child of an unbroken home and of the company of the absent parent, the student notewriter devotes only nine lines to Oklahoma. After quoting 76 O.S.

1971, §§ 6, 8, he concludes that they "seem to indicate that such a cause of action in favor of the child does exist in Oklahoma."

The sole question remaining is whether, independently of 76 O.S.1971, §§ 6, 8, a minor child has in Oklahoma a common law right to sue a third person whose luring away of the father breaks up the parents' marriage and deprives the child of the father's society and guidance. The common law recognized no such right in the child. That the injured spouse has an action for alienation of affections, loss of consortium, or criminal conversation does not require that a cause of action be given to the child. According to an annotation in 12 A.L.R.2d 1178 at 1181 (1950), only three jurisdictions [Illinois, Michigan, and Minnesota] recognized such right of action in the child, while six states and the District of Columbia denied the right. The A.L.R.2d Later Case Service (1971 and 1973 suppl.) digests cases from seven more jurisdictions denying the right, bringing to fourteen the number of jurisdictions denying the child this remedy. (Although not citing any authority, the defendant states that Illinois and Michigan no longer recognize the child's right of action, leaving Minnesota alone in that position.) The plaintiffs cite Prosser, Law of Torts 908 (3d ed. 1964) which, although recognizing that the majority of those jurisdictions which passed on the question have denied the child an action, predicts that in the future additional jurisdictions will allow his action. On the other hand, those modern statutes abolishing causes of action for alienation of affections, breach of promise to marry, and related actions; the increasing failure of marriages, reportedly more than one in three ending in absolute divorce or permanent separation; and the recent liberalization of divorce in several more states, including a ground or grounds not based on "fault"; and the increase in the number of children whose parents have divorced and remarried; may well prevent the future development predicted by the late Professor Prosser. In addition, there may be a growing feeling that very often

**1340**

the "fault" leading to the breakup of a marriage may not be readily determinable in court, and that the "fault" which caused one spouse to be attracted to a third person was not the magnetism of such third person, but that of an emotional vacuum in the home.

Although rendered unimportant by our above views, the defendant's argument of collateral estoppel or estoppel by judgment is inapplicable. Had the children possessed causes of action for the enticement away of their father, such rights would have been independent and not derivative, and hence (although brought for them by their mother as next friend) would not have been barred by an adverse judgment against their mother's suit in her individual capacity. Smittle v. Eberle, 353 P.2d 121 (Okl.1960); 50 C.J.S. Judgments § 804; Annot., 116 A.L.R. 1087–1093.

Affirmed.

BOX, P. J., and BAILEY, J., concur.