Joe BENNIGHT, et ux, et al.,
Appellants,

v.

WESTERN AUTO SUPPLY
COMPANY, Appellee.

No. 13838.

Court of Appeals of Texas,
Austin.

April 4, 1984.

Rehearing Denied May 2, 1984.

---

1. Tex.R.Civ.P. 166–A; *Swilley v. Hughes*, 488    S.W.2d 64 (Tex.1972).

Jack W. London, Law Offices of Jack W. London & Associates, P.C., Austin, for appellants.

Michael S. Hull, Brown, Maroney, Rose, Baker & Barber, Austin, for appellee.

Before SHANNON, POWERS and BRADY, JJ.

POWERS, Justice.

Joe Bennight and his minor daughter, Jennifer Bennight, appeal from a judgment of the trial court that denies them recovery in their suit against Western Auto Supply Company. Their claims arose from personal injuries sustained by Cathy Bennight, their wife and mother respectively, in the course of her employment with the company. We will reverse the judgment of the trial court that Joe Bennight take nothing, rendering judgment that he recover against Western Auto in the amount found by the

jury as his damages. We will affirm the judgment of the trial court that Jennifer Bennight take nothing by her suit.

## THE CONTROVERSY

The rear, or warehouse area, of the Western Auto retail store where Cathy Bennight worked was shown to be infested with bats, a fact known to the manager of the store who refused to have them removed after being requested several times by employees to do so. The manager knew the bats posed a serious risk of rabies should one bite an employee, a fact pointed out to him by employees and a local health official whom employees called to the store shortly before the incident giving rise to the present suit.

Cathy Bennight was fearful of the bats, a fact communicated repeatedly to the manager. On several occasions, he nevertheless required her, over her protests, to enter the bat-infested area in the course of her work. On one particular day, she was "attacked" by bats three times while in the rear of the store. She was not bitten although one became briefly entangled in her hair. The next working day, she was bitten by a bat when the manager required that she go again to the rear of the store on a business errand. The bite necessitated anti-rabies treatment.

In the course of treatment, Cathy reacted adversely to a prescribed vaccine, becoming permanently blind and emotionally disturbed. She asserted against Western Auto a worker's compensation claim that was ultimately settled and compromised pursuant to the Workers' Compensation Act, Tex.Rev.Civ.Stat.Ann. arts. 8306–8309f (1967 & Supp.1982).

Alleging that the manager had committed an intentional tort, Joe Bennight sued Western Auto for loss of consortium. Under similar allegations, Jennifer sued for harms allegedly sustained by her as a result of her mother's injuries. These harms are discussed in more detail below.

Before trial, the district court rendered summary judgment that Jennifer take nothing by her suit. The judgment rests, in this respect, upon the ground that Jennifer possessed no cause of action of the kind alleged by her. The parties proceeded to trial on Joe Bennight's claim for loss of consortium. At the conclusion of the trial, the jury returned the following verdict in answer to special issues submitted to them:

1. Do you find from a preponderance of the evidence that on the occasion in question [the manager] required Cathy Bennight to work in the warehouse area against her will with the intention of causing her to be bitten by a bat or to be otherwise exposed to rabies?

Answer: We do not.

\* \* \* \* \* \*

3. Do you find from a preponderance of the evidence that [Western Auto], through its manager, intentionally maintained an unsafe place to work?

Answer: We do.

4. Do you find from a preponderance of the evidence that on the occasion in question [the manager] required Cathy Bennight to work in the loft against her will when he knew that such place was an unsafe place to work?

Answer: We do.

5. Do you find from a preponderance of the evidence that the action described in Special Issue No. 4 was a proximate cause of physical or emotional harm to Cathy Bennight?

Answer: We do.

6. What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Joe Bennight for loss of consortium, if any, suffered by him in the past and which, in reasonable probability, will be suffered by him in the future, resulting from physical and emotional harm sustained by Cathy Bennight, if any. By "loss of consortium" is meant the mutual right of a husband and wife to that affection, solace, comfort, companionship, society, assistance, and sexual relations necessary to a successful marriage.

Answer: $87,500.00.

The trial court rendered judgment on the verdict that Joe Bennight take nothing. This appeal ensued.

### THE APPEAL OF JOE BENNIGHT

■ If the injury sustained by Cathy Bennight in her employment was an "accidental injury," Joe Bennight's loss of consortium is not compensable because his claim, being derivative of his wife's claim, is barred by the exclusive-remedy provision contained in the Workers' Compensation Act. If, on the other hand, Cathy's injury was the result of an *intentional* tort by the manager, her husband's claim for loss of consortium is not barred by the Act, for the bar extends only to "accidental injuries." By Cathy's settlement and compromise under the act, she is estopped from further recovery against Western Auto. *Massey v. Armco Steel Company*, 652 S.W.2d 932 (Tex.1983); *Castleberry v. Goolsby Building Corporation*, 617 S.W.2d 665 (Tex.1981); *Reed Tool Co. v. Copelin*, 610 S.W.2d 736 (Tex.1980); *Middleton v. Texas Power & Light Co.*, 108 Tex. 96, 185 S.W. 556 (1916). The parties concede the foregoing rules. Their dispute is whether the jury's verdict establishes that Cathy's injury was accidental or intentional.

■ The parties' respective contentions center upon the nature of the intent required in order that a tort might be classified as "intentional." Joe Bennight argues that the requisite intent refers to an intentional breach of a duty owed by an employer to his employee, here the duty of furnishing a safe place to work, so that an "intentional tort" results when such a breach of duty is the proximate cause of harm to some legally protected interest of the employee. Western Auto argues, on the other hand, that the intent required for an "intentional tort" is more circumscribed—that nothing short of an actual intent by the employer to injure the employee will suffice; and, moreover, the employer must intend to injure the employee: (1) in the precise way in which he was in fact injured and (2) in the specific legally protected interest in which he was in fact injured. Given their respective positions in argument, the parties are able to assign opposite meaning and effect to the jury's verdict in the present case.[1]

1. The parties' briefs on appeal invite our attention to numerous decisions in other jurisdictions concerning the nature of the intent required before a tort may be classified as "intentional." The prevailing view seems to be quite clearly that the actor must intend an actual injury to the employee; an intent merely to perform the act which constitutes a breach of duty will not suffice, nor is it sufficient if the actor intends only to expose the employee to an unreasonable risk of harm. *See* Larson, Workmen's Compensation Law, § 68.13 (1983). For the reasons which follow, we need not discuss the decisions in the other jurisdictions.

Western Auto urges a theory that narrows even further what we have called the "prevailing view": not only must the employee prove that the actor intended actually to injure him, he must prove that the actor intended to injure him *in a specific way* and *in a specific legally protected interest*. While some decisions in other jurisdictions involve factual situations where the employee *could* only have been injured in one way, and in only one legally protected interest, we find no authority for the rule advanced by Western Auto.

Joe Bennight argues that an employee need prove only that the actor intentionally breached a duty owed to the employee. This theory is rather vaguely supported by some phrases found in *Massey v. Armco Steel Company, supra; Castelberry v. Goolsby Building Corporation, supra;* and *Reed Tool Co. v. Copelin, supra.* Still other phrases in those opinions seem, on the other hand, to imply the prevailing view mentioned above. We are unable from the whole of these opinions to infer the precise view taken by the Supreme Court of Texas, or *whether* it has adopted any particular view. Nor is it necessary that we decide the present appeal by adopting the position taken either by Western Auto or by Bennight.

The trial court decided the case by applying to the jury verdict the severely restricted version of the prevailing view advanced by Western Auto. As noted in the text of this opinion, Western Auto's variation of the prevailing view is contrary to that view considered in its entirety. More importantly, Western Auto's variation would require that we reject the principle of the Texas precedents discussed in the text of this opinion, a principle that forbids the variation advanced by Western Auto without rejecting the prevailing view mentioned above. Conversely, that principle requires that Bennight recover on the jury verdict even under the prevailing view, a view necessarily applied as well by the trial court because it constitutes the foundation upon

Joe Bennight contends that Western Auto was under a duty to furnish his wife a safe place to work. Tex.Rev.Civ.Stat. Ann. art. 5182a, § 3(a) (1971). He argues that the verdict establishes a breach of that duty by the manager when he intentionally maintained the workplace in an unsafe condition and required Cathy to work there, as the jury found in answer to special issues 3 and 4. Therefore, when the jury's answers as to proximate cause and damages are coupled with those in response to special issues 3 and 4, Joe Bennight contends that the verdict establishes an intentional tort for which he was entitled to judgment on the verdict, notwithstanding the jury's answer to special issue 1.

Western Auto urges the terms of section 8A, Restatement (Second) of Torts (1965). That section provides:

> The word "intent" is used throughout the Restatement of this Subject to denote that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it.

The comments under the section give further meaning to the foregoing black-letter statement. The word "intent" refers "to the consequences of an act rather than the act itself" and "is limited, wherever it is used, to the consequences of the act." However, "intent" to cause particular consequences is not limited to those consequences which the actor "desires," but includes those which he knows are certain, or substantially certain, to result from his act. The charge to the jury defined "intent" substantially in the sense supplied by section 8A and the comments thereunder.

Based upon the foregoing definition of "intent," Western Auto points to the jury's answer to special issue 1 and argues that it confirms that the manager did *not* commit an intentional tort because the jury's answer establishes that: (1) the manager did

not intend the particular consequences (that is, being bitten by a bat and exposed to rabies) which followed from his requiring Cathy Bennight to work in the warehouse; and (2) those consequences were not certain or substantially certain to result from the manager's act.

■ We believe Western Auto's position to be unsound because it leaves no room for a legal principle well-established both in the Restatement itself and in several Texas decisions. The principle is this: the unlawful and intentional invasion of *one* legally protected interest of another will supply the intent necessary to hold the actor liable for the unintended consequences of his act when some *other* legally protected interest of the victim is harmed in consequence of the act. The jury's answer to special issue 1 establishes only that the manager did not intend that Cathy be bitten by a bat and exposed to rabies; it does *not* establish, as a matter of law, that he committed no intentional tort against Cathy, for as we will discuss below, the jury's answer to the remaining special issues established that he intentionally committed an assault against her and his intent in *that* regard is imputed *by operation of law* to the actual harm which did occur with catastrophic results.

Section 8A of the Restatement must, of course, be interpreted in conjunction with other related sections. Section 16, entitled "Character of Intent Necessary," referring to the intentional tort of "battery," illustrates the imputation of intent to the harm which actually resulted, although the actor intended by his act an invasion of some other legally protected interest.

> (1) If an act is done with the intention ... of putting another in apprehension of either a harmful or offensive bodily contact, and such act causes a bodily contact to the other, the actor is liable to the other for a battery although the act was

---

which Western Auto erects the more constrictive extension for which it contends. *The principle is, of course, that an actor's intent to injure by his unlawful act extends by operation of law to consequences which, while unintended, are legally caused by his act.* Under this principle,

the jury's verdict harmonizes itself and requires that Bennight recover, whether under the prevailing view or under Bennight's theory. This principle is long-established in Texas jurisprudence as discussed in the text of this opinion.

not done with the intention of bringing about the resulting bodily harm.

See also section 435B of the Restatement, entitled "Unintended Consequences of Intentional Invasions." We turn then to *whether* the jury's answers to the remaining special issues established the infliction of an intentional tort against Cathy by the manager.

The jury found in answer to special issues 3 and 5 that the manager intentionally failed to provide Cathy a safe place to work and required her to work there "against her will." The jury also found affirmatively on the issue of proximate cause and established the amount of damages necessary to compensate Joe Bennight for his loss of consortium. The phrase "against her will," as used in special issue 3, establishes that the manager intentionally placed Cathy Bennight in apprehension of being bitten or otherwise attacked *again* by a bat if she were required to work in the loft. The phrase can have no other meaning under the pleadings and the evidence. *State v. Hale,* 136 Tex. 29, 146 S.W.2d 731 (Tex.1941). Intentionally placing Cathy in such fear was an "assault," an invasion of her personality, and an independent intentional tort in and of itself. Restatement, *supra,* §§ 21, 24, 25, 27, 28, 31, 32, 34. More to the point for our present purposes, the manager's intention to place Cathy in such apprehension extends by operation of law to the specific additional injury which she did receive and for which she sought recovery, *whether or not* the manager in fact intended that additional and subsequent harm. Restatement, *supra,* § 16; Green, *Duties, Risks, Causation Doctrines,* 41 Tex.L.Rev. 42, 47–48 (1962); Prosser, *Transferred Intent,* 45 Tex.L.Rev. 650, 655 (1967).

Notwithstanding the fiction employed—whether the intent be "imputed," "presumed," "implied," "constructive," or even "transferred"—various Texas decisions illustrate the principle. *Hill v. Kimball,* 76 Tex. 210, 13 S.W. 59 (1890) (defendant liable to bystander, a pregnant woman who miscarried, for injuries sustained by her if proximately caused by defendant's intentional and wrongful beating of others in her presence); *City of Garland v. White,* 368 S.W.2d 12 (Tex.Civ.App.1963, writ ref'd n.r.e.) (defendant who intentionally and wrongfully shot plaintiff's dog liable for unintended injuries to plaintiff in form of mental pain and suffering and physical damage to his house caused by the shotgun blast); *Whitehead v. Zeiller,* 265 S.W.2d 689 (Tex.Civ.App.1954, no writ) (defendant who intentionally and wrongfully removes lateral support from land owned by plaintiff is liable for unintended consequences of soil erosion, destruction of trees, and deprivation of use); *Morrow v. Flores,* 225 S.W.2d 621 (Tex.Civ.App.1949, writ ref'd n.r.e.) (defendant liable for injury to plaintiff when defendant intended by his act to commit battery against third person).

The jury found in answer to special issues 3 and 4, under the interpretation we have given them, that the store manager intentionally placed Cathy Bennight in apprehension of a harmful or offensive bodily contact with a bat. The record does not reveal that Western Auto objected to the form of these issues, with the result that any objection to their form is waived. Tex. R.Civ.P.Ann. 272 (1976). We hold, accordingly, that the jury's verdict established that the manager committed against Cathy Bennight an "intentional tort" and that the trial court erred in its judgment that Joe Bennight take nothing by his suit. We render judgment for him in the sum of $87,500.00, the amount found by the jury as his damages proximately caused by the manager's intentional tort.

## THE APPEAL OF JENNIFER BENNIGHT

Jennifer Bennight sued Western Auto for money damages as compensation for three categories of harm allegedly sustained by her as a result of the store manager's intentional tort against her mother: (1) mental anguish resulting from Jennifer's observing her mother's injuries and suffering; (2) loss and impairment of certain intangible aspects of her relationship

with her mother, that is, her mother's affection, solace, comfort, companionship, society, and assistance; and (3) impairment of Jennifer's legal right to receive from her mother financial support.

■ We hold that Jennifer's petition did not state a cause of action allowable under the laws of this State. We therefore affirm the judgment of the trial court that she take nothing by her suit.

It is difficult "on the basis of natural justice to reach the conclusion that this type of action will not lie." *Hill v. Sibley Memorial Hospital,* 108 F.Supp. 739 (D.D. C.1952); *see* Note, *Domestic Relations— Minor Child's Cause of Action for Injuries Negligently Inflicted on the Mother,* 34 Tex.L.Rev. 773 (1956). The difficulty issues from the obvious reality of such injuries to a child when a parent suffers injuries such as those sustained by Cathy Bennight. One should think that in the ordinary case each family member would probably suffer a loss in much the same way. The difficulty arises as well from the incongruity of allowing certain family members, but not others, to recover for substantially the same harm suffered by each. May it logically be said that Joe Bennight's relationship with Cathy Bennight was harmed in this instance but Jennifer's relationship with the same person was not, assuming the proof showed a normal family relationship? Is Jennifer's interest less deserving of legal protection than that of Joe Bennight?

■ Quite obviously, the cause of action for which Jennifer contends would require the adjustment of several established legal principles. For example, one not present at the scene of injury to another is ordinarily not entitled to recover for mental anguish occasioned by the other's injury.

*See Renfro Drug Co. v. Lawson,* 138 Tex. 434, 160 S.W.2d 246 (1942); *Moore v. Charles B. Pierce Film Enterprises, Inc.,* 589 S.W.2d 489 (Tex.Civ.App.1979, writ ref'd n.r.e.). Ordinarily, the perpetrator of an intentional tort is not liable for loss of support sustained by those dependent upon the victim. Restatement, *supra,* § 707A. A primary purpose of the Workers' Compensation Act is to supply the injured employee money damages in compensation for his lost earning capacity, posing the obvious possibility of double recovery if those dependent upon the employee may recover for their loss of support in actions based upon intentional torts. There are other difficulties as well. On the other hand, the difficulty of proving the reality of injury and attendant money damages and the possibilities of speculation by the fact finder would appear to present no barrier in such a cause of action, given that such harms are routinely compensated in actions under the wrongful death statute.

We deal not merely with allowing a certain element of damages to be recovered by a plaintiff—to hold Western Auto to answer for Jennifer's allegations would require the establishment of a new duty in favor of a new class of persons. In *Garza v. Garza,* 209 S.W.2d 1012 (Tex.Civ.App. 1948, no writ), minor children sued "the other woman" for alienation of their father's affection, by reason of which they lost his affection and support. In reversing a judgment for the children, the appellate court declined to create in the children a new common law right of action, expressly basing its decision upon deference to the Legislature. This is the only pertinent Texas decision we have found; other jurisdictions are divided in various ways on the matter.[2] It is not the role of an intermediate appellate court to create a new cause of

**2.** We find in the digests the following decisions as to whether a child may maintain a cause of action, based upon the negligent injury of his parent, for various interests of the child alleged to have been harmed in consequence of his parent's injury. We have made no attempt to note whether the cause of action arises by virtue of a statute which creates it, or by the common law.

a. *Loss of financial support.* The following hold that a cause of action will not lie. *Clark v. Suncoast Hospital, Inc.,* 338 So.2d 1117 (Fla. Dist.Ct.App.1976); *Kelly v. U.S. Fid. & Guar. Co.,* 353 So.2d 349 (La.App.1977) (appeal dism'd); *Berger v. Weber,* 82 Mich.App. 199, 267 N.W.2d 124, (1978) (aff'd and modified 411 Mich. 1, 303 N.W.2d 424, 1981); *Suter v. Leonard,* 45 Cal. App.3d 744, 120 Cal.Rptr. 110 (1975); *Hankins*

action. We too must leave the matter to the Legislature or the Supreme Court of Texas. *See Sanchez v. Schindler*, 651 S.W.2d 249 (Tex.1983). We therefore affirm the judgment of the trial court as to the claim of Jennifer Bennight.

The judgment of the trial court is reversed insofar as it orders that Joe Bennight take nothing by his suit. We render judgment that he recover from Western Auto the sum of $87,500, together with post-judgment interest, from the date of the judgment below, as provided by law.

Reversed and Rendered in Part and Affirmed in Part.

SHANNON, Justice, dissenting.

I am not in agreement with the majority opinion.

Joe Bennight pleaded that Western Auto Supply committed intentional torts in: (1) compelling his wife Cathy Bennight to work in an area with a known dangerous condition; (2) intentionally inflicting emotional distress on Cathy Bennight; (3) intentionally maintaining an unsafe place to work; and (4) intentionally refusing to correct the conditions which created an unsafe place to work. Joe claimed that such intentional acts were a proximate cause of his loss of consortium.

*v. Derby*, 211 N.W.2d 581 (Iowa 1973); *Pleasant v. Washington Sand & Gravel Co.*, 262 F.2d 471 (D.C.Cir.1958, applying the law of the District of Columbia); *Jeune v. Del E. Webb Const. Co.*, 77 Ariz. 226, 269 P.2d 723 (1954).

b. *Loss of affection, society, companionship, guidance, and similar aspects of the parent-child relationship.* The following hold that a cause of action will not lie. *Priola v. Paulino* 72 Cal. App.3d 380, 140 Cal.Rptr. 186 (1977); *Clark v. Suncoast Hospital, Inc., supra; Hankins v. Derby, supra; Hayrynen v. White*, 9 Mich.App. 452, 157 N.W.2d 502 (1968); *Duhan v. Milanowski*, 75 Misc.2d 1078, 348 N.Y.S.2d 696 (N.Y.Sup.Ct. 1973); *Pleasant v. Washington Sand & Gravel Co., supra; Meredith v. Scruggs*, 244 F.2d 604 (9th Cir.1957, applying the law of Hawaii); *Turner v. Atlantic Coast Line R. Co.*, 159 F.Supp. 590 (N.D.Ga.1958, applying the law of South Carolina); *Hoffman v. Dautel*, 189 Kan. 165, 368 P.2d 57 (1962); *Gibson v. Johnston*, 144 N.E.2d 310, (Ohio App.1956) (appeal dism'd 166 Ohio St. 288, 141 N.E.2d 767, 1957); *Erhardt v. Havens, Inc.*, 53 Wash.2d 103, 330 P.2d 1010 (1958); *Hill v. Sibley Memorial Hospital*, 108 F.Supp. 739 (D.D.C.1952, applying the law of the District of Columbia); *Jeune v. Del E. Webb Const. Co., supra.* Contra: *Weitl v. Moes*, 311 N.W.2d 259 (Iowa 1981); *Berger v. Weber*, 411 Mich. 1, 303 N.W.2d 424 (1981).

c. *Mental anguish.* The following hold that a cause of action will not lie. *De Angelis v. Lutheran Medical Center*, 84 A.D.2d 17, 445 N.Y. S.2d 188 (1981).

With respect to the child's recovery in cases of intentional tort, we find the following:

a. *Loss of financial support.* The following hold that a cause of action will not lie. *Hale v. Buckner*, 615 S.W.2d 97 (Mo.App.1981); *Brookley v. Ranson*, 376 F.Supp. 195 (N.D.Iowa 1974, applying the law of Maryland); *Lucas v. Bishop*, 224 Ark. 353, 273 S.W.2d 397 (1954); *Johnson v. Luhman*, 330 Ill.App. 598, 71 N.E.2d 810 (1947); *Nelson v. Richwagon*, 326 Mass. 485, 95 N.E.2d 545 (1950); *Kleinow v. Ameika*, 19 N.J.Super. 165, 88 A.2d 31 (Law Div.1952). Contra: *Daily*

*v. Parker*, 152 F.2d 174 (7th Cir.1945, applying the law of Illinois and Pennsylvania). Each decision was based upon the child's suit for alienation of his parent's affection.

b. *Loss of affection, society, companionship, guidance, and similar aspects of the parent-child relationship.* The following hold that a cause of action will not lie. *Collier v. Wagner Castings Co.*, 70 Ill.App.3d 233, 26 Ill.Dec. 641, 388 N.E.2d 265 (1979, aff'd 81 Ill.2d 229, 41 Ill.Dec. 776, 408 N.E.2d 198); *Wheeler v. Luhman*, 305 N.W.2d 466 (Iowa 1981); *Roth v. Parsons*, 16 N.C.App. 646, 192 S.E.2d 659 (1972) (cert. denied 282 N.C. 582, 193 S.E.2d 745, 1973); *Nash v. Baker*, 522 P.2d 1335 (Okl.App.1974); *Wallace v. Wallace*, 155 W.Va. 569, 184 S.E.2d 327 (1971); *Mode v. Barnett*, 235 Ark. 641, 361 S.W.2d 525 (1962); *Whitcomb v. Huffington*, 180 Kan. 340, 304 P.2d 465 (1956); *Kane v. Quigley*, 1 Ohio St.2d 1, 203 N.E.2d 338 (1964); *McMillan v. Taylor*, 160 F.2d 221 (D.C.Cir.1946, applying the law of the District of Columbia); *Edler v. MacAlpine Downie*, 180 F.2d 385 (D.C.Cir.1950, applying the law of the District of Columbia); *Lucas v. Bishop, supra; Rudley v. Tobias*, 84 Cal.App.2d 454, 190 P.2d 984 (1948); *Taylor v. Keefe*, 134 Conn. 156, 56 A.2d 768 (1947); *Nelson v. Richwagon, supra; Kleinow v. Ameika, supra; Gleitz v. Gleitz*, 88 Ohio App. 337, 98 N.E.2d 74 (1951); *Garza v. Garza*, 209 S.W.2d 1012 (Tex.Civ.App.1948, no writ); *Scholberg v. Itnyre*, 264 Wis. 211, 58 N.W.2d 698 (1953); *Morrow v. Yannantuono*, 152 Misc. 134, 273 N.Y.S. 912 (N.Y.Sup.Ct.1934). Contra: *Koskela v. Martin*, 91 Ill.App.3d 568, 47 Ill.Dec. 32, 414 N.E.2d 1148 (1980); *Rudnick v. Vokaty*, 84 Ill. App.3d 1003, 40 Ill.Dec. 404, 406 N.E.2d 105 (1980); *Strode v. Gleason*, 9 Wash.App. 13, 510 P.2d 250 (1973); *Russick v. Hicks*, 85 F.Supp. 281 (W.D.Mich.1949, applying the law of Michigan); *Johnson v. Luhman, supra, Miller v. Monsen*, 228 Minn. 400, 37 N.W.2d 543 (1949); *Daily v. Parker, supra.* Each decision, except *Collier v. Wagner Castings Co.*, was based upon the child's suit for alienation of his parent's affection.

The district court, however, submitted the case to the jury upon only two of Joe's several theories of recovery. The special issues submitted by the district court most nearly correspond to Joe's theories (1) and (3).

The charge contained six special issues. The jury refused to find that Western Auto's agent required Cathy to work in the warehouse area against her will with the intention of causing her to be bitten by a bat or to be otherwise exposed to rabies. The jury found that Western Auto intentionally maintained an unsafe place to work in the warehouse area when its manager knew that such area was an unsafe place to work, and that Western Auto's requiring Cathy work in the warehouse area was a proximate cause of physical· or emotional harm to her. Finally, the jury concluded that $87,500.00 would compensate for loss of consortium. Pursuant to Western Auto's motion, the district court rendered judgment on the jury's verdict that Joe take nothing.

The record does not show that the parties objected to the court's charge or requested the submission of other special issues.

Joe does not attack the jury's refusal to find that Western Auto required Cathy to work in the warehouse area against her will with the intention of causing her to be bitten by a bat or to be otherwise exposed to rabies.[1] Instead, Joe argues, and the majority of this Court has held, that the jury's answers to the balance of the special issues entitle Joe to judgment for $87,-500.00. I cannot agree.

In a suit for loss of consortium, the deprived spouse's cause of action is considered to be derivative of the impaired spouse's action to the extent that the tortfeasor's liability to the impaired spouse must be established. *Whittlesey v. Miller,* 572 S.W.2d 665 (Tex.1978). As stated in the majority opinion, if Cathy's injury were an "accidental injury," Joe's loss of consortium is not compensable since his claim, like that of Cathy's, is barred by the exclusive remedy afforded by the Workers' Compensation Act. To the contrary, if Cathy's injury resulted from an intentional tort, Joe's claim for loss of consortium is not barred by the Act. *Massey v. Armco Steel Co.,* 652 S.W.2d 932 (Tex.1983).[2]

The central issue in this appeal is whether the jury's answers established the elements of an intentional tort by Western Auto against Cathy. The jury's affirmative findings established only that Western Auto intentionally maintained an unsafe work place; that, with the knowledge that such place was an unsafe work place, Western Auto required Cathy to work against her will in the warehouse area; and that such action proximately caused physical or emotional harm to Cathy.

The only intentional tort recognized in this state which could find support in the jury's answers to special issues, is assault. At common law, one may be subject to liability to another for assault if:

(1) he acts:

(2) intending to cause (a) a harmful or offensive contact with the person of the other (or a third person), or (b) an imminent apprehension of such a contact, and;

(3) the other is thereby put in such imminent apprehension.

Restatement (2d) of Torts, § 21 (1965).[3]

The findings of the jury fall short of establishing a common law assault in the

---

**1.** As previously written, there is nothing in the record to show that Joe was dissatisfied with the district court's rather narrow submission of this ground of recovery.

**2.** Cathy's settlement of her claim for workers' compensation did not bar Joe's claim for intentional impairment of consortium. *Reed Tool Co. v. Copelin,* 610 S.W.2d 736 (Tex.1981).

**3.** Some Texas cases hold that the legal definition of an assault is the same in civil actions as it is in criminal prosecutions, making reference to Tex.Pen.Code Ann. § 22.01. *Hogenson v. Williams,* 542 S.W.2d 456, 458 (Tex.Civ.App.1976, no writ); *Texas Bus Lines v. Anderson,* 233 S.W.2d 961, 964 (Tex.Civ.App.1950, writ ref'd n.r.e.). There are, apparently, no Supreme Court cases. *Cf. Gravis v. Physicians and Surgeons Hospital of Alice,* 427 S.W.2d 310 (Tex. 1968); *Fisher v. Carrousel Motor Hotel, Inc.,* 424 S.W.2d 627 (Tex.1967); *Houston Transit Company v. Felder,* 146 Tex. 428, 208 S.W.2d 880

**382**

following respects: (1) the jury's answers do not establish that Western Auto's manager intended to cause a harmful or offensive contact with Cathy or that he intended to cause an imminent apprehension in Cathy of such a contact and (2) that Cathy was, by virtue of the manager's act, put in such imminent apprehension. An act which is committed without the intention of causing a harmful or offensive contact or imminent apprehension of such a contact does not make the actor liable in intentional tort to the other for any apprehension caused thereby even though the act involves an unreasonable risk of causing the apprehension. Restatement (2d) of Torts, § 21(2).[4]

Had the district court rendered judgment on the jury's verdict for Joe, this Court would deem as found in favor of the judgment that the manager's act was committed with the intent to cause a harmful or offensive contact to Cathy or to cause her imminent apprehension of such contact and that Cathy was put in imminent apprehension of harmful or offensive contact since there is some evidence in support of these omitted elements of recovery. Tex.R.Civ. P.Ann. 279 (1977). However, because the district court rendered judgment on the verdict against Joe, this Court presumes that the district court found against Joe on the omitted elements of his theory of recovery. Tex.R.Civ.P.Ann. 279.

> (1948). *See also* 9 Stayton's Texas Forms 512, Sec. 5055, suggesting the following submission of an "assault and battery" case.
>
> > 1) Do you find ... that the defendant struck the plaintiff on the occasion in question?
> > 2) Do you find ... that the plaintiff sustained injuries by reason of being so struck ...?
> > 3) What sum of money, if any, do you find ... will fairly and reasonably compensate plaintiff ...?
>
> **4.** The rule in most states in cases of this kind is that acts on the part of the employer do not rise to the level of an intentional tort absent the establishment of the employer's specific intent to injure. *See Williams v. International Paper Company,* 129 Cal.App.3d 810, 181 Cal.Rptr. 342 (1982); *McAdams v. Black & Decker Manufacturing Co., Inc.,* 395 So.2d 411 (La.App.1981), cert. denied, 400 So.2d 1380 (La.1981); *Great*

The judgment of the district court should be affirmed.

*Western Sugar Company v. District Court,* 610 P.2d 717 (Mont.1980); *Foster v. Allsop Automatic, Inc.,* 86 Wash.2d 579, 547 P.2d 856 (1976); *Kittell v. Vermont Weatherboard, Inc.,* 138 Vt. 439, 417 A.2d 926, 927 (1980) (The overwhelming weight of authority in other jurisdictions is that "the common-law liability of the employer cannot ... be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury." 2A A. Larson, Workmen's Compensation Law § 68.13, at 13–8 and 9 (1983), and cases cited *id.* at n. 11. Nothing short of a specific intent to injure falls outside the scope of the Act. 2A A. Larsen, *supra,* § 68.13....) *See also* 96 A.L.R.3d 1064, 1077–1081.