IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-474-CV





BONNIE ANN PRIETO, INDIVIDUALLY AND AS NEXT FRIEND OF HER MINOR CHILDREN


RACHEL LANETTE PRIETO, JOHNNY DOUGLAS PRIETO, TIMOTHY ARNOLD PRIETO,


JONATHAN MICHAEL PRIETO, AND ANASTASIA BABETTE PRIETO,



 APPELLANTS


vs.





BLOCKMAKERS, INC., FORMERLY DOING BUSINESS AS CRIBLOCK


RETAINING WALLS, INC.; AND CRIBLOCK RETAINING WALLS, INC.,



 APPELLEES




 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT



NO. 475,103, HONORABLE JERRY DELLANA, JUDGE PRESIDING



 





PER CURIAM

 This is an appeal from a judgment notwithstanding the verdict. The question
presented is whether any evidence exists to support the jury's finding that an employer
intentionally injured one of its employees. We will reverse the trial court's judgment.



I. BACKGROUND


 On December 3, 1987, San Juan Prieto's right arm was crushed when a two-thousand-pound presshead on a pre-casting machine unexpectedly descended on his arm. His
employer was Criblock Retaining Walls, Inc. (hereinafter Criblock). (1) Before the injury occurred,
Criblock had modified the machine so that a safety device designed to prevent the presshead from
descending until the machine operator pulled a lever no longer automatically engaged.

 Prieto received worker's compensation benefits for his injuries. Act of March 28,
1917, 35th Leg., ch. 103, § 1, Part I, § 3(a), 1917 Tex. Gen. Laws 269, 270-71 (Tex. Rev. Civ.
Stat. Ann. art. 8306, § 3(a), repealed and re-enacted as the Texas Workers Compensation
Act--Tex. Rev. Civ. Stat. Ann. art. 8308, § 3.08, repealed and nonsubstantively recodified at Tex.
Lab. Code Ann. art. 406.034). Prieto is not a party to this cause.

 Appellant Bonnie Ann Prieto, individually and as next friend of Rachel Lanette
Prieto, Johnny Douglas Prieto, Timothy Arnold Prieto, Jonathan Michael Prieto, and Anastasia
Babette Prieto, minors, sued Criblock alleging that its intentional alteration of the safety device
on the machine that injured Prieto constituted an intentional injury because Criblock (1) knew or
was substantially certain that the alteration of the safety device would result in an injury to Prieto
such as the one he sustained, (2) Criblock's conduct in intentionally disabling the safety device
resulted in a substantial certainty that Prieto would sustain an injury such as the one complained
of and rendered Criblock substantially certain that Prieto would be injured in the manner
described, or (3) Criblock knew and believed that the intentional removal of the safety device was
substantially certain to cause or result in the injury complained of by plaintiffs. Appellant also
alleged negligence per se, and assault and battery. (2) Appellant prayed for compensatory damages
for loss of spousal and "parental" consortium, and loss of support; punitive damages; pre- and
post-judgment interest; and court costs.

 Trial was to a jury. Jury question number one inquired: "Do you find that
Criblock Retaining Walls, Inc., intentionally failed to provide a safe place to work knowing with
substantial certainty that San Juan Prieto would be injured?" (3) The jury answered, "Yes." In its
verdict, the jury awarded damages in the amount of $55,000 for loss of parental consortium and
$10,000 for loss of spousal consortium; and punitive damages of $60,000 dollars. Thereafter, the
trial court granted Criblock's motion for judgment notwithstanding the verdict, denied plaintiff's
motion for judgment on the verdict, set aside the jury's verdict, and rendered judgment that
appellant take nothing. Appellant appeals from the trial court's judgment notwithstanding the
verdict.



II. DISCUSSION


A.  Scope and Standard of Review

 In a single point of error, appellant asserts that the trial court erred in granting
appellee's motion for judgment notwithstanding the verdict because the evidence was sufficient
to support the jury's finding that appellee intentionally injured San Juan Prieto. In its judgment,
the trial court stated, "Because it appeared to the Court that the evidence in this case is insufficient
to bring this case to the threshold of an intentional tort as a matter of law, judgment
notwithstanding the verdict should be rendered in favor of [Criblock]." Thus, appellant need
rebut only the specific ground in the motion for judgment notwithstanding the verdict on which
the trial court based its judgment. Voskamp v. Arnoldy, 749 S.W.2d 113, 118 (Tex.
App.--Houston [1st Dist.] 1987, writ denied).

 In reviewing a judgment notwithstanding the verdict, the court must view the
evidence admitted at trial in favor of the nonmovant and determine that there was no evidence
upon which the jury could have found for the nonmovant. Exxon Corp. v. Quinn, 726 S.W.2d
17, 19 (Tex. 1987); Carrow v. Bayliner Marine Corp., 781 S.W.2d 691, 693 (Tex. App.--Austin
1989, no writ). The record is reviewed in the light most favorable to the finding, considering
only the evidence and inferences which support the finding and rejecting the evidence and
inferences contrary to it. Navarett v. Temple Indep. Sch. Dist., 706 S.W.2d 308, 309 (Tex.
1986). When more than a scintilla of competent evidence supports the jury's finding, the
judgment notwithstanding the verdict should be reversed. Id. at 310.



B.  Intentional Injury

 Our review of the record is limited to determining whether any evidence exists to
support the jury's finding that Criblock intentionally failed to provide a safe place to work
knowing with substantial certainty that Prieto would be injured as a result thereof. The
fundamental difference between negligent injury--or even grossly negligent injury--and intentional
injury is the specific intent to inflict injury. Reed Tool Co. v. Copelin, 689 S.W.2d 404, 406
(Tex. 1985). "Intent" means "that the actor desires to cause consequences of his act, or that he
believes that the consequences are substantially certain to result from it." Rodriguez v. Naylor
Indus. Inc., 763 S.W.2d 411, 412 (Tex. 1989). 

 Falling within the intentional injury exception are direct assaults by an employer
on an employee. Reed, 689 S.W.2d at 406. Additionally, conduct short of a direct assault may
rise to the level of an intentional tort. See Rodriguez, 763 S.W.2d at 412-413 (supervisor ordered
employee to drive truck with bald cracked tires that blew out flipping truck and injuring
employee; affidavit evidence that if the truck were driven in the condition described, supervisor
would be substantially certain blowout would occur and cause truck to go out of control raised fact
issue on intent); Bennight v. Western Auto Supply Co., 670 S.W.2d 373, 375 (Tex. App.--Austin
1984, writ ref'd n.r.e.) (employer committed intentional tort when he repeatedly ordered
employee into bat infested area of building with knowledge of infestation and risk of rabies;
employee was bitten and suffered adverse reaction to rabies treatment rendering her permanently
blind and emotionally disturbed).

 Other conduct, standing alone, does not rise to the level of intentional injury. In
Reed, the supreme court observed that other jurisdictions do not regard as the equivalent of an
intentional injury the (1) intentional failure to provide a safe workplace; (2) intentional
modification or removal of safety controls or guards; (3) intentional violation of a safety
regulation; or (4) intentional failure to train an employee to perform a dangerous task. Reed, 689
S.W.2d at 406.

 This does not mean, however, that such conduct can never rise to the level of
intentional injury. In Reed, the supreme court held that the intentional failure to furnish a safe
place to work does not rise to the level of intentional injury except when the employer believes his
conduct is substantially certain to cause the injury. Id. 

 Regarding evidence of employer intent, the injured person's lack of awareness of
another's intent to injure him, cannot, standing alone, establish the non-existence of that intent as
a matter of law. Just as the employee's lack of awareness is not conclusive on the issue of an
employee's intent, neither is an employer's statement that he had no subjective intent to injure an
employee. There are ways to establish such intent other than asking the employer how he felt
about an injury-causing event after it has already occurred. Rodriguez, 763 S.W.2d at 413
(affidavit evidence of expert in accident reconstruction, maintenance, and safety raised question
of fact on intent; affidavit recited that if truck were driven in condition described by injured
person, supervisor who knew of truck's condition and ordered employee to "drive truck or walk"
would be substantially certain blowout would occur and cause truck to go out of control).



C.  Summary of the Evidence Supporting the Jury's Answer to Question Number One (4)

 The record reflects that at the times relevant to this cause, Wayne Wright was
president of Criblock. Alton Young was the plant manager and made all the decisions on a daily
basis. Young answered to Wright. Everyone else at the plant answered to Young. Keith
Schippal was the head machine operator; all of the other machine operators were responsible to
Schippal. Frank Chadwick was a maintenance person at Criblock. Criblock had approximately
six to eight employees at the plant where Prieto worked.

 Criblock had two precasting machines at its plant: the "old" machine and the
"new" machine. Prieto was injured on the "new" machine. Chadwick testified that Schippal
asked him to install a small attachment on the new machine. The attachment would allow the
presshead to come down without the operator having to pull a handle to release the safety arms
that otherwise automatically engaged to prevent the presshead from descending. Chadwick wanted
no responsibility for installing the piece and refused to make the requested modification unless
management was aware of it and the employees were trained to use the attachment. Only after
Schippal and Young told Chadwick that Wright knew about the modification and "it would be
okay and the employees would be trained to use the device" did he modify the safety device. 
Chadwick also testified that he did not think installing the latch created a dangerous situation for
"him or any qualified operator." However, after installing the device, he considered cutting it off
because "they break out unqualified people on occasion." He believed that a person not using the
machine properly could get hurt. Chadwick further testified that he repeatedly and vigorously
warned operators of the possibility of injury resulting from the latch being used, but did not recall
specifically talking to Prieto about the modification. Chadwick testified that he warned Young
the machine could be unsafe and that someone could get hurt; he also talked personally to
Schippal. Chadwick further testified that the effect of the alteration would be obvious to anyone
familiar with the operation of the machine. Finally, Chadwick testified that if the operators knew
how to operate the machine, it was not unsafe.

 Alonzo Reyes was employed at Criblock from August through December 1987. 
Regarding training on the new machine, Reyes testified that he received no formal training. 
Rather, Reyes observed Schippal working on the new machine and asked a lot of questions. He
also testified that Schippal was not open about the operation of the machine with other workers
because, in Reyes' opinion, "Keith was afraid that if [Prieto] or [Reyes] were proficient in the
machinery [they] would take over his job." Reyes was never given an operator's or safety manual
on the new machine. Reyes testified that he was afraid of the new machine because, "It was a
new machine, we knew very little about it, I hadn't received enough instructions to operate it or
enough training to operate it properly."

 Reyes testified that Schippal altered the safety feature approximately one month
before the accident. To Reyes' knowledge, Prieto was not involved in the alteration of the safety
device. Young was aware that the safety devices had been disengaged. Reyes further testified
that he was not aware of Schippal showing Prieto anything about the new machine other than
where to put the material in the back. Most of Prieto's knowledge of the new machine came from
Young telling him what was going on. Reyes did not know whether Young told Prieto about the
altered safety device. Finally, Reyes testified that, in his opinion, on the day Prieto was injured,
the presshead could not have come down if the safety device had not been altered.

 Andrew Ortiz, Prieto's brother-in-law, also worked at Criblock at the time of the
accident. He testified that the modification was made before Prieto began working on the
machine. He never heard anyone tell Prieto that the safety device had been altered.

 Prieto testified that he received approximately ten minutes' training from Young
on the operation of the new machine, which consisted of Young showing Prieto how to use the
automatic switches that controlled the new machine. Prieto never received, or had read to him,
an operator's manual for the new machine. Prieto did see a video of the new machine in
operation. Prieto testified he was never instructed in the operation of the safety lever on the
machine. Prieto further testified that he did not know about unlatching the latch so that he could
use the safety lever to control when the presshead came down. He had no idea the machine had
been modified.

 Alton Young testified that he knew the safety device had been modified before the
accident and that the purpose of the modification was to keep the safety device from engaging
automatically. Young further testified that he had the authority to make the modification on the
machine, that the decision was in the course and scope of his employment and that the authority
was given him by Wright. Young testified that he, Schippal, and Chadwick made the decision
to modify the safety device. Young further testified that a manual was available to employees in
the break room, but he did not personally call the manual to the attention of Prieto or the other
operators.

 Donald Nance Garner is an engineer who works primarily in accident
investigation, failure analysis, and accident reconstruction, including construction accidents and
mechanical failures. He testified as an expert for the plaintiff. He testified that he was familiar
with machines that press materials into forms to make cement blocks. He made a personal
inspection of the machine that injured Prieto, including taking photographs. Garner testified that
Prieto's arm could not have been crushed if the machine had not been altered. Garner was then
asked:



Q: If you assume that [Prieto's] arm was injured by the head of that machine
coming down and crushing it, and if you will assume at the time of that injury
those latches were locking out the safety blocks, and assume what you know
from reading in a safety operating manual there, what the manufacturer says
about the machine, do you have an opinion as to whether or not the alteration
of that machine by installing that latch to defeat the safety blocks made it
substantially certain that someone would be injured in the manner in which
[Prieto] was, that is, the presshead crushing a part of his body.


 . . . .


A: Well, it's my opinion that if the safety latches are blocked out of the machine,
then it's only a matter of time before this accident would happen and therefore
it's substantially certain that it will happen, it's just a matter of when.



D.  Analysis

 To establish intentional conduct, more than knowledge and appreciation of risk is
necessary; the known danger must cease to be only a foreseeable risk which an ordinary,
reasonable, prudent person would avoid (ordinary negligence) and must become a substantial
certainty. The intentional modification or removal of safety controls or guards, standing alone,
is not the equivalent of an intentional injury. See Reed, 689 S.W.2d at 406. As the Reed court
noted:



The intentional removal of a safety device or toleration of a dangerous condition
may or may not set the stage for an accidental injury later. But in any normal use
of the words, it cannot be said, if such an injury does happen, that this was
deliberate infliction of harm comparable to an intentional jab to the chin.



Reed, 689 S.W.2d at 407 (citing 2A A. Larson, The Law of Worker's Compensation). Based on
our reading of Reed, we believe that Criblock's intentional modification of the safety device does
not rise to the level of an intentional injury unless Criblock, through its conduct, failed to provide
a safe workplace knowing with substantial certainty that an injury to Prieto would occur.

 Young testified that he, Schippal and Chadwick made the decision to modify the
safety device. Young also testified that he knew that the purpose of the modification was to
prevent the safety device from engaging automatically. Chadwick testified that the effect of the
modification would be clear to anyone familiar with the operation of the machine and that Young
was familiar with the operation of the machine. Additionally, Chadwick told Young and Schippal
that the modification would make the machine unsafe and could result in injury. Chadwick
refused to make the modification unless management approved it and the employees were trained
to use it. Chadwick testified that he told Young: "I'll put that on there if the people are trained
to use it properly. If they don't, I'll cut it off of there just as quick as I put it on." Chadwick
testified that if the operators knew how to operate it, it would not be unsafe. Chadwick also
testified that Young told him that the employees would be trained to use the device. Appellant's
expert, Garner, testified that Criblock's modification made it substantially certain that an injury
like the one to Prieto would happen. This testimony is some evidence that Criblock knew that in
the absence of proper training, the modification made it substantially certain that an injury like
the one Prieto suffered would occur.

 Young trained Prieto on the new machine. Thus, Young knew Prieto would use
the machine. Young testified that he did not personally call the MF-3 Precaster manual (which
recites basic safety requirements) to the attention of Prieto or the other operators. Young did not
otherwise testify regarding Prieto's training. Ortiz testified that the modification was made before
Prieto began working on the machine and he never heard anyone tell Prieto that the safety device
had been altered. Reyes testified that to his knowledge, Prieto was not involved in the alteration
of the safety device and he was not aware of Schippal showing Prieto anything about the new
machine other than where to put the material in the back. Chadwick did not recall personally
telling Prieto about the modification. Prieto testified that no one ever told him about the
modification or instructed him about using the safety device. This testimony is some evidence that
Criblock failed to tell Prieto about the modified safety device or to train him to safely operate the
machine once it had been modified.

 In the face of Chadwick's testimony warning Young that the modification was
unsafe and could result in injury, his insistence that the employees be trained before he would
make the modification, and Garner's testimony that the modification made it substantially certain
that an injury like Prieto's would occur, the jury could reasonably conclude that Criblock's
intentional modification of the safety device coupled with its failure to warn or train Prieto, made
it substantially certain that Prieto would be injured. Accordingly, we hold that some evidence
exists that Criblock failed to provide a safe work environment knowing with substantial certainty
that Prieto would be injured. We sustain appellant's first point of error.

 Appellee Criblock has not raised a challenge to the factual sufficiency of the
evidence to support the jury's answer to question number one by way of cross-point. Nor has
Criblock raised any other cross-point complaining of the court's charge or the jury's verdict. 
Accordingly, we reverse the trial court's judgment and remand the cause to the trial court with
instructions that it render judgment consistent with this opinion.


Before Justices Powers, Jones and Kidd

Reversed and Remanded

Filed: January 11, 1995

Do Not Publish

1. [1]  At the time San Juan Prieto was injured, his employer was Criblock Retaining Walls, Inc. 
Appellant sued Blockbusters, Inc., formerly doing business as Criblock Retaining Walls, Inc., and
Criblock Retaining Walls, Inc. In her fourth amended petition, appellant alleges that on March
25, 1988, Criblock Retaining Walls, Inc. changed its name to Blockmakers, Inc., but is the same
entity and is liable for the same acts and omissions as Criblock Retaining Walls, Inc. In the
alternative appellant alleged that Blockmakers was formed to take over the assets and liabilities
of its predecessor and is thus liable for any of Criblock's liabilities. The parties stipulated in the
trial court that a judgment taken against any defendant in the proceeding shall constitute a
judgment against both or all defendants. 
2. [2]  Since Prieto's injuries were compensable under the Texas Workers Compensation Act, only
claims involving intentional torts by Criblock are actionable by Prieto or his wife. Rodriguez v.
Naylor Indus., Inc., 763 S.W.2d 411, 412 (Tex. 1989); Reed Tool Co. v. Copelin, 689 S.W.2d
404, 406 (Tex. 1985).
3. [3]  The parties do not complain of any error in the submission of this question.
4. [4]  The evidence presented to the jury included live testimony, oral deposition testimony, and
video evidence.