**RINEHART et al., Appellants,**

v.

**BOARD OF EDUCATION, WESTERN LOCAL SCHOOL DISTRICT; Uhrig et al., Appellees.**

[Cite as *Rinehart v. W. Local School Dist. Bd. of Edn.* (1993), 87 Ohio App.3d 214.]

Court of Appeals of Ohio,
Pike County.

No. CA–484.

Decided April 15, 1993.

*Charles H. Wilson*, for appellants.

*Eric B. Herschberger*, for appellees.

STEPHENSON, Judge.

This is an appeal from a judgment of the Pike County Common Pleas Court. The court granted summary judgment in favor of Rick Uhrig and Jack Stowers, defendants below and appellees herein. Appellants, Larry and Paul Rinehart, assign the following error for our review:

"Plaintiffs submit that the summary judgment granted to Defendants, Jack Stowers and Rick Uhrig, by the Common Pleas Court of Pike County was in error and was prejudiced [sic] to these Plaintiffs."

Appellants commenced the instant action on February 13, 1991, filing a complaint in the Pike County Court of Common Pleas. Named as defendants in the action were the Board of Education of Western Local School District ("Board"), Rick Uhrig, a teacher at Parker Elementary School, and Jack L. Stowers[1], principal of Parker Elementary School. The complaint avers that Paul, a twelve-year-old student at Parker Elementary School, was administered a spanking by appellee Uhrig on September 7, 1990. The complaint states that the spanking was not justified and that it resulted in severe bruises, causing Paul pain and emotional distress and causing his father, Larry, to incur medical expenses for Paul's treatment. Paul Rinehart demanded compensatory damages in the sum of $100,000 and punitive damages in the sum of $200,000. Larry Rinehart demanded compensatory damages in the sum of $25,000 and punitive damages in the sum of $50,000.

On November 22, 1991, appellees filed their motion for summary judgment. In that motion, appellee Uhrig argued that he should be granted summary judgment on the ground that he was immune from liability under R.C. 2744.03. Appellee Stowers argued that he should be granted summary judgment because he neither witnessed nor played a part in the spanking. His only connection to the incident is that he was principal of the school when the spanking occurred. Appellants filed a memorandum opposing appellees' motion for summary judgment, stating that "Paul V. Rinehart had his Constitutional Rights violated in that the procedures followed by the persons inflicting corporal punishment and by the school did not comply with the requirements of *Baker v. Owen*, 395 F.Supp. 294 ( [M.D.N.C.] 1975)." Appellees filed a reply memorandum. On January 14, 1992, the court summarily granted appellees' motion for summary judgment. This appeal follows.

The granting or denial of a motion for summary judgment is governed by Civ.R. 56, which reads as follows:

"(C) Motion and proceedings thereon.

" * * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary

---

1. Appellee Stowers is incorrectly referred to as "Jack L. Stowens" in the complaint.

judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * * "

■■■■ Summary judgment is appropriate when the following have been established: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881. The burden of showing that no genuine issue exists as to material facts falls upon the party moving for summary judgment. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798.

In *Carbone v. Overfield* (1983), 6 Ohio St.3d 212, 6 OBR 264, 451 N.E.2d 1229, the Supreme Court of Ohio held that the defense of sovereign immunity was not available to a board of education in an action for damages for injuries caused by the negligence of its employees. In response to this and similar decisions, the General Assembly enacted Am.Sub.H.B. No. 176 (141 Ohio Laws, Part I, 1699), which outlines when a political subdivision and its employees may be liable. See *Howe v. Jackson Twp. Bd. of Trustees* (1990), 67 Ohio App.3d 159, 586 N.E.2d 217; *Koch v. Avon Bd. of Edn.* (1989), 64 Ohio App.3d 78, 580 N.E.2d 809.

R.C. Chapter 2744 provides a three-tiered scheme. First, in R.C. 2744.-02(A)(1), the general rule of immunity is stated. Secondly, R.C. 2744.02(B) sets forth specific exceptions to the grant of immunity provided in R.C. 2744.02(A)(1). Finally, R.C. 2744.03 delineates defenses or immunities of subdivisions and employees from the liability imposed in R.C. 2744.02(B).

R.C. 2744.03 reads as follows:

"(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

" * * *

"(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division, the employee is immune from liability unless one of the following applies:

"(a) His acts or omissions were manifestly outside the scope of his employment or official responsibilities;

"(b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]"

The use of corporal punishment on pupils is provided for in R.C. 3319.41, which reads, in part, as follows:

"(A) Except as otherwise provided by rule of the board of education adopted pursuant to section 3313.20 of the Revised Code or of the governing body of the private school, a person employed or engaged as a teacher, principal, or administrator in a school, whether public or private, may inflict or cause to be inflicted, reasonable corporal punishment upon a pupil attending such school whenever such punishment is reasonably necessary in order to preserve discipline while such pupil is subject to school authority."

Pursuant to R.C. 3313.20, the Board adopted the following rule pertaining to corporal punishment:

"Corporal punishment *where other methods have failed* may be administered by a teacher or by the Principal *if not actuated by malice or anger, expressed or implied,* and if there is no danger of physical injury to the student. The only acceptable corporal punishment is by the use of a properly designed paddle. Such corporal punishment shall be administered only in the presence of at least one witness who shall be a teacher, a staff member, a principal, or a parent. An exception to this corporal punishment rule may be made in cases of emergency when a student becomes an immediate threat to the safety, health or life of others and his/her removal must be made by physical force. Such removals shall be reported as soon as possible to the Principal. Also it is strongly recommended that the witness be of the same sex as the student." (Emphasis added.)

In the instant case, appellants assert that summary judgment was improperly granted to appellee Uhrig because the paddling was against the Board's corporal punishment rule. More specifically, appellants assert that the paddling was administered before other methods of discipline had failed and that it was "a wilful act motivated by anger." Appellants reason that if the paddling was administered contrary to the Board's policy, Uhrig's acts were outside the scope of his employment and he would be excluded from immunity under R.C. 2744.-03(A)(6)(a). If the paddling was motivated by actual malice, then Uhrig would be excluded from immunity under R.C. 2744.03(A)(6)(b).

■ In support of their motion for summary judgment, appellees presented a portion of Paul's deposition testimony.[2] Paul stated that on the date of the

---

2. While the record contains a notice of filing of the depositions of appellants Paul V. Rinehart and Larry Rinehart, the record contains only the depositions of appellees Stowers and Uhrig. The docket sheet does not reflect that the Rinehart depositions were ever filed in the instant

paddling, he had been "out of line" and he had been talking. Later that day, Paul referred to appellee Uhrig as "a dickhead" in the presence of his classmates. Appellee Uhrig's deposition reveals that Paul used this name for Uhrig during his lunch period. When the students came outside after lunch around 12:30 p.m. several students reported to Uhrig the name by which Paul had referred to him. At 12:45 p.m. the students came inside the building and Uhrig took Paul aside. Paul admitted to Uhrig that he had called him "a dickhead."

Uhrig went to the office to see if there was a note on file from Paul's father which requested that Paul not be paddled. There was no such note on file. Uhrig described the paddling as follows:

"I had Paul bend over, touch his ankles. Okay? I held onto his belt loop to steady him, and I paddled him. I give him one swat, so to speak. You know, of course, he was crying around, but basically, he was starting to do that before then because he knew he wasn't going to get out of it like he thought he was. I gave him time to gain composure, to let me know if anything was wrong. He said nothing, and I administered the other two swats.

"Q. And the instrument that you used, what was this?

"A. It was a paddle.

" * * *

"Q. Paul was asked about who may have witnessed this corporal punishment being given to him. Did you have a witness in there?

"A. Yes. I had two.

___

case. However, appellants neither objected at the trial court level nor raised the issue on appeal. In fact, appellants assert in their reply brief that "[t]here was, however, submitted and made a part of the record the depositions of all the parties, not just those portions of the depositions of Appellant, Paul V. Rinehart, that was attached to the Memorandum of Appellees below * * *."

This court held in *Boydston v. Norfolk S. Corp.* (1991), 73 Ohio App.3d 727, 731, 598 N.E.2d 171, 174, fn. 2:

"Much of the evidence presented for summary judgment was in the form of portions of depositions attached to appellants' memorandum contra summary judgment. The depositions were not properly before the court below since the depositions were never filed in that court. However, appellees never objected to the use of such material. In fact, appellees also attach portions of unfiled depositions to their summary judgment motion. Since there were no objections, the court below could consider the deposition testimony in making its decision. McCormac, Civil Rules Practice (1991 Supp.) 85, Section 6.33; *Rodger v. McDonald's Restaurants of Ohio, Inc.* (1982), 8 Ohio App.3d 256, 8 OBR 347, 456 N.E.2d 1262; *Brown v. Ohio Cas. Ins. Co.* (1978), 63 Ohio App.2d 87, 17 O.O.3d 267, 409 N.E.2d 253." See, also, *Gaumont v. Emery AirFreight Corp.* (1989), 61 Ohio App.3d 277, 572 N.E.2d 747; Whiteside, Ohio Appellate Practice (1991) 69–70, Section 7.02.

Accordingly, appellants' failure to object to the court's consideration of the portions of the unfiled Rinehart depositions incorporated into appellees' motion for summary judgment constituted a waiver.

" * * *

"Q. You said he knew what was going on. Both of these teachers knew the reason—

"A. Absolutely. That's why they are a witness.

"Q. —the reason that you told them as to why you were giving corporal punishment? Did you tell them at the time?

"A. Yes, they knew. Just like I reminded Paul before I administered corporal punishment why he was getting punishment. I asked him if he understood why he had been paddled.

"He said, 'Yes, of course.'

"I said, 'Have you been paddled at school?'

"He said, 'No.'

"I said, 'Have you been paddled at home?'

"He said, 'No.'

"I said, 'Do you have paddling at home?'

"He said, 'Yes.'

"I said, 'Is there anything physically wrong that you can't be paddled?'

"He said, 'No,' and the witness was present for all of that."

Appellees also cited a portion of Larry Rinehart's deposition testimony in which Mr. Rinehart stated that he did not see why Uhrig would be out to get Paul, since he never knew Paul and had never even heard of him until the day of the paddling. Based upon the foregoing evidence, appellees asserted that Uhrig was entitled to summary judgment because he was immune from liability under R.C. 2744.03(A)(6)(b), in that reasonable minds could not conclude that Uhrig acted with malicious purpose or in a wanton and reckless manner. With regard to Stowers, appellees asserted that Stowers's only connection to the incident is that he was principal of the school when the paddling occurred. Stowers's deposition reveals that he was away from the school when the paddling took place.

Appellants' motion opposing appellees' motion for summary judgment stated that appellees' motion was not well taken because the school and the persons administering the corporal punishment "did not comply with the requirements of *Baker v. Owen*, 395 F.Supp. 294 ( [M.D.N.C.] 1975)." Attached to and incorporated into appellants' memorandum is a copy of the headnotes on the *Baker* case.

Appellees filed a reply memorandum, stating that appellants do not dispute the absence of wanton or reckless conduct and do not dispute the validity of the

defense of immunity in their memorandum contra summary judgment. Appellants' reply memorandum further states that *Baker* construed a North Carolina statute which allowed corporal punishment as long as the force used was reasonable.

Upon review, we find the court below did not err in granting summary judgment to appellees. Appellants, in their memorandum opposing appellees' motion for summary judgment, failed to set forth any specific facts showing there was a genuine issue for trial. See Civ.R. 56(E); *VanFossen v. Babcock & Wilson Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph seven of the syllabus.

It is clear that appellee Uhrig followed the Board's policy on corporal punishment to the letter. Paul had been "out of line" and talking earlier that same day. It is apparent from Paul's continuing course of misbehavior that other methods of discipline (including sending Paul to Saturday school as punishment for talking in class) were ineffective and had failed. None of the evidentiary material creates a genuine issue of fact as to whether Uhrig's actions were conducted with a malicious purpose or in a wanton or reckless manner. Thus, the trial court was correct in determining that Uhrig was immune from liability and in granting summary judgment to appellee Uhrig.[3]

Accordingly, appellants' sole assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

PETER B. ABELE and GREY, JJ., concur.

---

3. While appellants' assignment of error refer to appellee Stowers, their brief contains no argument urging the reversal of the court's grant of summary judgment to appellee Stowers. Accordingly, this court may disregard that portion of appellants' assignment of error pertaining to appellee Stowers. App.R. 12(A) and 16(A).